## LONDON–BUTTE GOLD MINES CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 2162.

Circuit Court of Appeals, Tenth Circuit.

Dec. 3, 1940.

T. Raber Taylor, of Denver, Colo. (Lewis A. Dick, of Denver, Colo., on the brief), for petitioner.

Warren F. Wattles, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

This petition to review a decision of the Board of Tax Appeals involves income and excess profits taxes for the calendar year 1935. The facts are not in dispute. Petitioner acquired certain gold mining property situated in Colorado. The property was in the development stage during 1933 and 1934, and passed to the production stage in February, 1935. During 1933 and 1934, petitioner mined and sold ore to two smelters for agreed prices. Another mining company asserted ownership of the ore and gave notice of its claim to the smelters. As a result, the smelters declined

to make payment to petitioner. Petitioner filed suit against one of them in the state court. Part of the money due for the ore was deposited in the registry of the court to await a determination of the controversy in respect to the ownership of the ore, and the balance was retained by the smelters until the litigation was finally settled. In 1934 the court determined that the ore in question and the impounded money were the property of plaintiff, and rendered judgment accordingly; the case went to the supreme court of the state, Mosquito Gold Mines, Inc., v. London-Butte Gold Mines Co., 96 Colo. 536, 45 P.2d 175; the judgment was affirmed in April, 1935; and a petition for rehearing was denied on May 20th. The money impounded in the registry of the court and that withheld by the smelters first became available to petitioner on May 20, 1935. Part of it was actually received later in May and the balance in July. Petitioner had charged the amounts due for the various shipments of ore to accounts receivable from the two smelters, and when the money was received it was credited to such accounts. The Commissioner treated the entire fund as income for the year 1935; computed depletion on a percentage basis, resulting in an aliquot part of the depletion attributed to the withheld fund; and asserted a resulting deficiency in income and excess profits taxes. The Board of Tax Appeals sustained that action.

■ The books of account of petitioner were kept on the accrual basis. Ordinarily where books of account are kept on that basis, income represents taxable gain if it is actually received or the right to its receipt is definitely fixed during the taxable year. That general rule is not challenged. But, it is contended that the proceeds from the mining operations during 1933 and 1934 were capital receipts, or a return of capital, and therefore did not constitute income. The contention rests upon Article 235(a) of Treasury Regulations 77, promulgated under the Revenue Act of 1932, and Article 23(m)-15(a) of Treasury Regulations 86, promulgated under the Revenue Act of 1934. The pertinent parts of the two regulations are identical in language and read: "All expenditures in excess of net receipts from minerals sold shall be charged to capital account recoverable through depletion while the mine is in the development stage. The mine will be considered to have passed from a development to a producing status

when the major portion of the mineral production is obtained from workings other than those opened for the purpose of development, or when the principal activity of the mine becomes the production of developed ore rather than the development of additional ores for mining."

■ Unless otherwise provided by a controlling statute or regulation, proceeds arising from sales of mined ore are income, not return of capital. Compare Stratton's Independence, Limited, v. Howbert, 231 U.S. 399, 34 S.Ct. 136, 58 L.Ed. 285; Stanton v. Baltic Mining Co., 240 U.S. 103, 36 S.Ct. 278, 60 L.Ed. 546; Goldfield Consolidated Mines Co. v. Scott, 247 U.S. 126, 38 S.Ct. 465, 62 L.Ed. 1022; New Creek Co. v. Lederer, 3 Cir., 295 F. 433, certiorari denied 265 U.S. 581, 44 S. Ct. 456, 68 L.Ed. 1190. And this regulation does not change the nature of such proceeds. Instead, it merely authorizes the charging of expenditures in excess of net receipts from minerals sold during the development stage to capital account recoverable through depletion. That is all it undertakes to do.

■ If the proceeds had actually accrued to petitioner in 1933 and 1934, while the mine was in its development stage, the regulation would have application. But they were withheld from petitioner to await the outcome of the litigation. The litigation was not finally terminated and the right of petitioner to such proceeds determined until May, 1935. Until then the right of petitioner to them was contingent and might never ripen into ownership. It was then that petitioner first became entitled to them. They became income at that time, not before. North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; Commissioner of Internal Revenue v. Southeastern Express Co., 5 Cir., 56 F.2d 600. And since the mine had already passed from the development stage to the production stage, no part of such income was then chargeable to capital account recoverable through depletion under the terms of the regulation.

■ Petitioner places strong reliance upon this stipulation: "It is agreed by the petitioner and the respondent that if the proceeds from the ore sales had been received by the petitioner during its development stage, that is prior to February 20, 1935, it would have been credited to development expense and not classed as in-

come under Article 235(a) of Regulations 77, and Article 23(m)-15 of Regulations 86. The petitioner keeps its books on the accrual basis."

But the difficulty confronting the contention is that for the reasons already outlined, the proceeds which accrued during the development stage were income. The law made them so. The stipulation was an erroneous stipulation of the legal effect of the admitted facts. A stipulation of that kind is not binding upon the court and should be disregarded. Swift & Company v. Hocking Valley R. Co., 243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722; Estate of Sanford v. Commissioner, 308 U.S. 39, 51, 60 S.Ct. 51, 84 L.Ed. 20; John A. Nelson Co. v. Commissioner, 7 Cir., 75 F.2d 696, reversed on other ground 296 U.S. 374, 56 S.Ct. 273, 80 L.Ed. 281.

The decision of the Board of Tax Appeals is affirmed.