HELVERING, Com'r of Internal Revenue, v. CANNON VALLEY MILLING CO.

No. 12206.

Circuit Court of Appeals, Eighth Circuit.

July 15, 1942.

Benjamin M. Brodsky, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Kenneth Taylor, of Minneapolis, Minn. (R. T. Angell and Kingman, Cross, Morley, Cant & Taylor, all of Minneapolis, Minn., on the brief), for respondent.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

Taxpayer is a milling company which was subject to processing taxes under the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq. It kept its books on the accrual basis and its fiscal year ended June 30th. It brought suit to test the validity of such taxes. The court ordered deposited with it—to await the result of the suit—such taxes collected by taxpayer from vendees of products processed and sold by it during May and June, 1935, which amounted to $53,148. Taxpayer claimed this sum as a tax deduction in its return for its tax year ending June 30, 1935. Shortly after the Supreme Court, on January 6, 1936, declared the Act invalid (United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914), the District Court paid over to taxpayer the above sum (less the small registry fee). This payment does not appear upon any return by taxpayer. Both before and after the above decision by the Supreme Court, numerous claims for reimbursement were made against taxpayer by its vendees from whom it had collected the above taxes for May and June. Although denying any liability to reimburse but because of business reasons, taxpayer.

compromised these claims for a total amount of $29,423.45. These compromises and payments were in taxpayer's 1937 tax year. In September, 1938, the Commissioner gave notice of a deficiency determination for tax year 1935, which (inter alia) included disallowance of the above deduction of $53,148. In its petition on appeal to the Board, taxpayer challenged this disallowance as: "improper unless there be allowed as a deduction from gross income for the taxable year the amount of reimbursements made by the taxpayer to its customers on account of such unpaid processing taxes with respect to deliveries made during the taxable year in the sum of $30,238.92, or in some other amount which fairly represents the reimbursements attributable to the taxable year." The facts were stipulated and therein taxpayer waived "any claim to the deduction in the fiscal year 1935 of the amount of $23,-724.55," being the difference between the amounts collected from and paid back to its vendees. In his brief to the Board, the Commissioner raised, for the first time, the question of non-compliance by taxpayer with Regulations 86, Art. 43-1(a) and the Board considered that contention. The only other issue before the Board was the propriety of the deduction for reimbursements. The Board determined this in favor of the taxpayer and the Commissioner brings this review. Since the parties agree that the disallowance of processing taxes claimed in the return for 1935 is proper in that year [1] but differ only as to the reduction of the amount of such disallowance by the reimbursements, we accept that situation and consider only the two issues presented to the Board and here. Those two issues are: (1) is respondent entitled to relate back these reimbursement payments to its tax year 1935 "in order to clearly reflect" its income under Section 43 of the Revenue Act of 1934, 48 Stat. 680, 694, Title 26 U.S.C.A. Int.Rev.Code, § 43; and (2) whether compliance with Treasury Regulations 86, Article 43-1(a), is a necessary prerequisite to invocation of above Section 43 by respondent.

### I. Section 43.

The pertinent portion of Section 43 is: "The deductions and credits * * * pro-

vided for in this title [chapter] shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, *unless in order to clearly reflect the income the deductions or credits should be taken as of a different period."* (Italics added.) The immediately important language, within which taxpayer claims to come, is "unless in order to clearly reflect the income the deductions * * * should be taken as of a different period."

The Commissioner admits, apparently, that these disbursements are proper deductions but contends they are allowable in 1937 (when the taxpayer compromised and paid the claims of its vendees) and cannot be related back to 1935 under the above "unless" clause. His reasoning is: (1) that the essence of this tax system is determination of tax liability on an annual basis; (2) that a disputed business liability does not become a deductible item until the contingency changes into a fixed and certain liability and these reimbursements did not become fixed and certain until 1937; (3) that neither the language, purpose nor proper application of the "unless" clause in section 43 justifies a departure from the above principles because (a) the clause must be taken as ex gratia, (b) must be strictly construed, and (c) the legislative history of the clause excludes its application here.

We understand that taxpayer opposes this reasoning of the Commissioner only as to the proper construction and application here of the "unless" clause of section 43. Thus the questions for us are: the construction of this clause and the application of the clause, so construed, to the fact situation here.

*Construction of the "unless" clause.* The construction urged by the Commissioner seems to be that it should be narrowly confined to instances of a "payment in one year of fixed determinable charges of a number of prior years" or of "accumulated deductions for a period of years" which may be distributed over prior years, to prevent distortion of income—such as "to allow a corporation which leases its business property to spread its rental payments,

---

[1] As to this matter, there is discord in the decisions Ben Bimberg & Co. v. Helvering, 2 Cir., 126 F.2d 412; Davies' Estate v. Commissioner, 6 Cir., 126 F.2d 294; J. A. Dougherty's Sons, Inc., v. Commissioner, 3 Cir., 121 F.2d 700; and see Bergan v. Commissioner, 2 Cir., 80 F.2d 89, and Inland Products Co. v. Blair, 4 Cir., 31 F.2d 867.

made in a lump sum for a group of prior years, over the period of those years." The supporting argument seems to be (1) the disruption of the basis of annual estimation of taxable income; and (2) the intent of Congress as revealed in the Committee Reports upon this provision in the Act of 1924 (where it first appears). The construction urged by taxpayer is that the clause covers all deductions which require relation to avoid distortion of income.

■ As to the Commissioner's argument as to disruption, it is clear that this clause does interfere with the conception of an inescapable, "straight jacket" annual basis wherein all deductions must appear as paid or finally accrued. Obviously, the clause is intended to do just that for that is what it says. The argument has value only in this: that the clause introduces an exception to the normal situation and that, because of the importance of maintaining the normal situation, the exception should be strictly construed.

As to the argument that the legislative history, as shown by the Committee Reports (to the Act of 1924), requires confinement to payment of accumulated expenses covering items extending over a period of years, we find no sufficient basis. The Committee Report (H.R. No. 179, 68th Cong., 1st Sess., pp. 10, 11) is as follows: "In subdivision (d) of this section authority is granted to the Commissioner to allow or require deductions and credits to be taken as of a year other than that in which 'paid' or 'accrued' when, in his opinion, it is necessary in order to clearly reflect the income. The Revenue Act of 1921 in sections 214(a) 6 and 234(a) 4 authorizes the Commissioner to allow the deduction of losses in a year other than that in which sustained when, in his opinion, it is necessary to clearly reflect the income. The proposed bill extends that theory to all deductions and credits. The necessity for such a provision arises in cases in which a taxpayer pays in one year interest or rental payments or other items for a period of years. If he is forced to deduct the amount in the year in which paid, it may result in a distortion of his income which will cause him to pay either more or less taxes than he properly should." [2]

The Report states the occasion of the provision in section 43 but the language of the section is more general than the reason stated in the Report. Had the Congress intended to limit this section to instances where "a taxpayer pays in one year interest or rental payments or other items for a period of years," it would have been easy to say so (compare section 107, Revenue Act 1939, 26 U.S.C.A. Int.Rev. Code, § 107). There is no suggestion of such a limitation in the section. We have no difficulty in saying that the section includes the situations stated in the Report. However, we cannot write into the section such a limitation on the ground that the expression in the Committee Report suggests such action. Helvering v. City Bank Farmers Trust Co., Trustee, 296 U.S. 85, 89, 56 S.Ct. 70, 80 L.Ed. 62.

■ The situations to which this clause is applicable are stated in the section to be those where a departure from the normal rule is necessary "in order to clearly reflect the income." It is neither possible nor prudent to undertake a definite definition of such situations—each must be dealt with on its own facts as it arises. However, there are some considerations helpful to bear in mind in applying the clause. It is obvious that the shift of any deduction from the year in which it is paid or is finally accrued must result in disturbance of the normal annual basis as to the two years necessarily involved. To construe this clause broadly to cover all instances where there is merely some relation between a deductible item and a business transaction in some year other than the one in which it was paid or finally accrued would introduce an uncertainty

---

[2] The references to the Revenue Act of 1921 are as follows: sec. 214(a) (6), 42 Stat. 240, provided that individual losses sustained in business or trade and not compensated for, in any transaction entered into for profit and unconnected with the trade or business, and of property not connected with the trade or business, were allowable in the tax year when they were sustained "unless, in order to clearly reflect the income, the loss should, in the opinion of the Commissioner, be accounted for as of a different period."

Section 234(a) (4), 42 Stat. 255, providing for deductions to corporations, stated that "Losses sustained during the taxable year and not compensated for by insurance or otherwise; unless, in order to clearly reflect the income, the loss should in the opinion of the Commissioner be accounted for as of a different period."

seriously interfering with the practical administration of tax statutes. Clearly, no such general disturbance of the system was contemplated by section 43. Therefore, such relationship alone is not enough. There must be, in addition to such relationship, a situation which clearly convinces that unless such deduction item is transferred there would be a *distortion* of the income of the taxpayer for one or both years, which would amount to an injustice either to the taxpayer or to the Government.[3] We think the guide for construction of this "unless" clause is that it comprehends those exceptional situations where it is necessary to transfer a deduction item in order to avoid such a distortion of income as would produce an injustice. It is this guide we apply to the fact situation here.

■ *Application.* In the months of May and June, 1935, this taxpayer collected the processing tax as a part of its sales prices. In its tax return for that year, the amount of such collections was included in its gross income and was entirely offset by a claimed tax deduction. The result was that the collections had no effect upon its net income. Three years later, the Commissioner redetermined the tax by disallowing the deduction. Since this disallowance left the gross income (which included the collections) undisturbed, the result would be that the net income would be increased by the amount of the collections. It was not until 1936 that the contingency (validity vel non of the A. A. Act) was resolved and the right of taxpayer to the accrued income from the collections was determined. Therefore, the disallowance by the Commissioner was a relation back to the tax year 1935 of an accrual which had become fixed in a later year. At the time of the redetermination, it was established that only a part of the collections had remained the property of

the taxpayer and a part of its income. All that taxpayer seeks is to have related back, from 1937, the disbursements which reduced the collections in order that its net income for 1935 will be "clearly" and truly stated. Both the deduction and the reimbursements relate to the same transactions in 1935. Clearly, to disallow the deduction and to refuse the decrease thereof by the reimbursements will distort the taxable income for that year. To permit the Commissioner to open up the item of deduction only to the extent it serves his purposes and to deny the taxpayer the effect of the reimbursements affecting the same item resulting in its paying a higher tax than it justly owes is an injustice to the taxpayer.

The distortion of income and resulting injustice is further emphasized by other evidence. The deduction was taken in tax year 1935; the A. A. Act was declared invalid and the impounded collections paid to taxpayer in 1936; and the reimbursements were made in 1937. Since taxpayer's fiscal year 1936 began July 1, 1935, it collected and impounded processing taxes during a portion of that year (until the Act was declared invalid) to the amount of $170,131.50. Of this amount, $104,757.46 was reimbursed to its vendees in 1937. Taxpayer's return for 1936 has been revised by the Commissioner to disallow claimed deduction of the $170,131.50 with no decrease because of reimbursement of the $104,757.46. The position of the Commissioner is that the reimbursements of payments made to taxpayer in 1935 and 1936 (conceded deductible in some year) are deductible only in 1937. In this situation, it is clear that the question of the year for deduction of the reimbursements will affect the three tax years 1935, 1936 and 1937. Therefore, it is pertinent to examine what would be the effects upon the taxable incomes of taxpayer for each of these

---

[3] Federal income tax legislation is a progressive growth based upon developing experience. Several distinct lines of growth are evident. One of these concerns us here. While an annual period has always been maintained as the normal basis for taxation, experience soon developed that injustice would result in some instances from a strict adherence thereto. This experience led the Congress to provide departures from this annual basis in specified situations for the purpose of avoiding injustice. An early instance of this is section 204(b) of the Act of 1918 (see Senate Rep. No. 617, 65th Cong., 3d Sess.) where losses, in defined situations, were allowed in the succeeding year. An incomplete list of other instances includes sections 214(a) (12) (a), 234(a) (14) (a), Act of 1918, 40 Stat. 1061, 1068, 1079; sections 204(b), 214(a) (6), 234(a) (4), Act of 1921, 42 Stat. 231, 240, 255; and section 43, Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 43. Also, see early Regulations as to amortization. Helvering v. Union Pacific Railroad Co., 293 U.S. 282, 284 and note 1, page 285, 55 S.Ct. 165, 79 L.Ed. 363.

three years of application of the Commissioner's contention.

The volume of business (measured by barrels processed) was fairly constant during the fiscal years 1931–1939, inclusive.[4] The respective effects of the taxpayer's and of the Commissioner's theories upon taxpayer is shown in a summarizing schedule appearing in the majority opinion of the Board.[5] That opinion correctly summarized the situation as follows: "It is obvious from an examination of the computation made by the respondent that petitioner is being taxed upon an income of $50,464.03 in 1935 and $154,540.69 in 1936, a total of $205,004.72, whereas in fact—if the subsequent reimbursements to its vendees upon and applicable to, the sales in those years be considered—the actual result of its operations was a net income of $21,040.58 for 1935 and a net income of $49,773.23 for 1936, or a total of $70,813.81. Under respondent's computation a similar distortion of petitioner's true income for 1937 also results. Thus, the business actually transacted by it during 1937 resulted in a net loss of $18,032.22 (assuming in this connection that the amount reported by it in its return is correct). If the amounts paid to its vendees which have no relation whatever to the sales made in that year are deducted, the result of its operations is a loss of $152,223.13."

From these facts it appears that application of the Commissioner's theory would grossly distort taxpayer's net income for each of the three years to its decided prejudice, while application of taxpayer's theory would truly reflect such incomes in a practical, common sense, business view. "Taxation is an intensely practical matter and laws in respect of it should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences." Farmers Loan & Trust Co. v. State of Minnesota, 280 U.S. 204, 212, 50 S.Ct. 98, 100, 74 L.Ed. 371, 65 A.L.R. 1000.

For the above reasons, we think the "unless" clause in section 43 is applicable to and governs the situation here.

---

4 This appears as follows:

| "Year ending in | Number of Barrels | | |
|---|---|---|---|
| 1931 | 293,926 | 1935 | 280,072 |
| 1932 | 325,522 | 1936 | 312,372 |
| 1933 | 281,706 | 1937 | 298,745 |
| 1934 | 288,657 | 1938 | 283,492 |
| | | 1939 | 335,886." |

5 This schedule (wherein taxpayer is called "petitioner" and the Commissioner is called "respondent") is as follows:
"

| | Net income | | | |
|---|---|---|---|---|
| | A | B | C | D |
| Year | Reported on return | Without considering deductions because of reimbursements | Per petitioner's contention | Per respondent's contention. |
| 1935..... | ($577.31) | $50,464.03 | [2] $21,040.58 | $50,464.03 |
| 1936..... | Not shown | 154,540.69 | [2] 49,773.23 | 154,540.69 |
| 1937..... | (18,032.22) | (18,032.23) | (18,032.22) | [3] (152,223.13) |

1 The figures in parenthesis indicate losses.
2 Petitioner deducts from its net income as shown in column B the $29,423.45 paid to its vendees on account of wheat processed and sold during May and June 1935, and the $104,757.46 paid to its vendees in connection with wheat products sold during its fiscal year ended June 30, 1936, and prior to January 6, 1936, thus arriving at the above amounts.
3 Respondent has not yet audited or revised petitioner's return for 1937. He claims, however, that the payments to petitioner's vendees, aggregating $134,190.91, are deductible only on its income and excess profits tax returns for the year 1937."

## II. The Regulation.

This contention of the Commissioner has to do with the necessity of the taxpayer complying with existing regulations of the Department applicable here. The pertinent portion of Article 43-1(a) of Treasury Regulations 86, promulgated under the Revenue Act of 1934, is as follows: "If a taxpayer desires to claim a deduction or a credit as of a period other than the period in which it was 'paid or accrued' or 'paid or incurred,' he shall attach to his return a statement setting forth his request for consideration of the case by the Commissioner together with a complete statement of the facts upon which he relies. However, in his income tax return he shall take the deduction or credit only for the taxable period in which it was actually 'paid or incurred,' or 'paid or accrued,' as the case may be. Upon the audit of the return, the Commissioner will decide whether the case is within the exception provided by the Act, and the taxpayer will be advised as to the period for which the deduction or credit is properly allowable."

■ The record here contains no showing as to whether or not the taxpayer complied with this regulation. Since the taxpayer is claiming a deduction, it is incumbent upon it to present a situation entitling it thereto. If the above regulation is valid and applicable, such presentation must be either a showing of compliance therewith or a proper reason for not complying.

■ The taxpayer argues both the invalidity and the inapplicability of this regulation. One such argument is that the regulation is invalid as going beyond the power of the Commissioner under the statute. This argument seems based on a comparison with Section 41 of the Act, 26 U.S.C.A. Int.Rev.Code, § 41, wherein the Commissioner is expressly given the power to examine a return and determine the correct amount of the tax in a situation covered by that section. Because no such power is expressly granted in Section 43, it is urged that it did not exist thereunder. This argument seems unsound. Because the statute prescribed a specific method—through the action of the Commissioner—to cover the situations in Section 41 is no reason why the Commissioner is powerless under Section 43 where no specific method or procedure is expressed therein. Sec-

tion 62 of the Act, 48 Stat. 680, 700, 26 U.S.C.A. Int.Rev.Code, § 62, makes it the duty of the Commissioner to "prescribe * * * all needful * * * regulations for the enforcement" of the income provisions of the Act.

■ Another argument to the same end is that the existence of the exceptional situation in Section 43 is for the sole and primary determination of the Board of Tax Appeals. It is true that the Board tries issues of fact de novo, but it does so purely as a reviewing agency and not as one of original action. It is, as its name implies, purely a Board of Appeals to afford the taxpayer an administrative tribunal to review actions of the Department. Unless the Commissioner has power to deal with such matters by suitable regulations, it is difficult to see how there could be an administrative determination as to whether a related back deduction is or is not allowable under the exception in Section 43. The quoted requirements of the regulation give no more than a proper opportunity for the Commissioner to be apprised of and to determine, in an orderly manner, the propriety of such a deduction sought by a taxpayer. The method set forth in the regulation is well adapted to its purpose and easy of compliance by the taxpayer.

■ The taxpayer argues that the regulation is applicable only to situations where a related deduction or credit under Section 43 is sought to be applied to a year later than the actual occurrence and does not apply to relate the occurrence back to an earlier tax year. There is nothing in the wording of the regulation which suggests such a construction nor have we been shown any reason why the general language of the regulation should not apply to all situations, both past and future. The regulation is, obviously, applicable to every general situation where the taxpayer desires such a related deduction or credit either in past or future years.

■ The regulation being valid and applicable and no compliance therewith being shown, this taxpayer was compelled to show a particular situation here which excused it from non-compliance. The situation urged is concisely as follows. The taxpayer had secured the benefit of the entire deduction in its return for 1935. It originated no movement, before the Commissioner or otherwise, to change this

649

situation. The Commissioner disturbed this situation by a redetermination of the tax for 1935 through elimination of this deduction item. In the justifying statement attached to the notice of redetermination, the Commissioner clearly stated his knowledge that reimbursements in connection with this deduction had occurred. That statement is as follows: "No adjustment has been made for the accrual of reimbursements subsequently paid to your vendees in settlement of their claims arising out of the invalidation of the Agricultural Adjustment Act for the reason that there is no evidence on file in this office to indicate that a definite agreement to settle or compromise such claims was entered into with such vendees during the taxable year here under consideration. (See G.C.M. 20134, Internal Revenue Bulletin 1938, No. 22, page 4)."

This statement includes a direct ruling by him that such reimbursements would not be considered in the adjustment unless "a definite agreement to settle or compromise such claims was entered into with such vendees *during the taxable year here under consideration*". (Italics added.) There was never any contention by the taxpayer that such agreement existed in 1935. While there was wording in the contracts of sale by the taxpayer concerning "any decrease in the processing tax as now or hereafter imposed by the United States shall inure to the benefit of the buyer," yet the taxpayer constantly denied any liability for reimbursement under such contracts or otherwise. This being the fact situation as to the reimbursements, the above-quoted statement is a clear expression that the reimbursements here were not allowable. Therefore, the situation was that before the notice of redetermination there was no occasion for the taxpayer to comply with the regulation and after such notice the futility of such compliance was made definite by the Commissioner. An attempt to comply with the regulation, after the notice, would have been an idle gesture without result or effect upon the situation. We do not mean that a taxpayer can avoid compliance with a valid and applicable regulation of the Department merely because he thinks an attempt at compliance would be fruitless—the opposite is, of course, true. However, the situation is different where the Commissioner definitely states such futility at a time when the taxpayer has yet opportunity for attempted compliance.

Another controlling consideration is that these reimbursements are an intimate part of a definite transaction which the Commissioner is himself opening up. The matter opened up by the Commissioner here is the processing tax transactions of the taxpayer in May and June, 1935. The amount of such taxes was included in gross income and offset by the deductions for taxes in the return with the net result that they had no effect upon net income. The reimbursements obviously decreased the gross income by that much. If reduction by the reimbursements is entirely disallowed it is obvious that the net income will be improperly increased to the amount of the reimbursements, although they are an intimate part of the transaction affecting the net income and the entire situation as to these taxes as reflected in 1935. In the limited situation where the Commissioner has expressly stated his position toward these reimbursements and where the reimbursements are an intimate part of transactions dealt with in the redetermination and resultant increase of tax liability, non-compliance with this regulation cannot be urged as a bar to consideration of such reimbursements in connection therewith.

The order of the Board should be and is affirmed.

THOMAS, Circuit Judge (dissenting).

I am unable to agree with the conclusion of the majority as expressed in the able and logical opinion written by Judge STONE:

First, because in my view such conclusion is based upon a wrong construction of the "unless" clause in § 43 of the Revenue Act of 1934. While the language of the clause is susceptible of the construction placed upon it in the majority opinion, it seems clear to me that it was not the intent of Congress that the exception should be construed to permit losses determined in any year to be allowed as deductions from income received in some previous year.

When a statute embodying a long-established system of law, such as the federal system of taxation, is amended by adding a limiting phrase or clause, such amendment should be construed to remedy the evil designed to be cured and not to disrupt or to disturb the settled principles of the system, which it cannot be presumed

the legislature intended to change. The committee reports in Congress, referred to in the majority opinion, disclose what the evils were which it was sought to remedy by the "unless" clause. The deductions claimed in this case are not included among them. The construction placed upon that clause by the decision of the Board and sustained by the majority opinion would tend to annul the preceding part of § 43 and to destroy three of the well-settled principles of the federal income tax system.

These principles are, (1) that the system is operated upon a yearly basis, Heiner v. Mellon, 304 U.S. 271, 58 S.Ct. 926, 82 L.Ed. 1337; Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; (2) income has accrued and the tax is assessable when all the events which fix the amount of the tax and determine the liability of the taxpayer have occurred, United States v. Anderson, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347; Helvering v. Union Pacific Ry. Co., 293 U.S. 282, 55 S.Ct. 165, 79 L. Ed. 363; and (3) a deduction cannot be taken by a taxpayer on an accrual basis until the year in which the disputed or contingent liability is finally determined, and the deduction is allowable in the latter year only; it cannot be related back to the year in which the events causing the loss occurred, Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365, 51 S.Ct. 150, 75 L.Ed. 383; Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197.

These principles have been adhered to by the courts since the enactment of the amendment to § 43 the same as they had been before that time. Guaranty Trust Co. v. Commissioner, 303 U.S. 493, 498, 58 S. Ct. 673, 82 L.Ed. 975; Penn v. Robertson, 4 Cir., 115 F.2d 167, 173; Griffin v. Smith, 7 Cir., 101 F.2d 348, certiorari denied, 308 U.S. 561, 60 S.Ct. 73, 84 L.Ed. 471; Saunders v. Commissioner, 10 Cir., 101 F.2d 407, 409.

The advantages or disadvantages of the government or the taxpayer in a particular case should have no weight in construing or applying the law.

Second, because the taxpayer failed to sustain the burden of establishing its right to any deduction.

It is elementary that deduction provisions of a taxing statute must be strictly construed, and that a taxpayer claiming a deduction must be able to point to the applicable statute and prove that his claim is within its terms. Deputy v. DuPont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212. In the instant case it is stipulated that the refunds for which the deduction is claimed were made "in order [1] to avoid threatened litigation, [2] *keep the good will of its customers,* and [3] compromise said disputed claims." (Italics supplied.) There is no evidence showing what amount of the refunds was attributable to any of these three separate elements. Whatever indefinite amount was paid to keep the good will of the customers was not a deductible business expense but rather a capital expenditure and not deductible in any event. Welch v. Helvering, supra. In so far as the record discloses refunds may have been made to some customers for one of these reasons, to others for another reason, or all of the reasons stated may have entered into each transaction with all the taxpayer's customers. Assuming that the taxpayer upon the record is entitled to some deduction, it has not shown any definite amount to which it is entitled. Mere proof that payments were made to customers is not sufficient to show that such payments are deductible under any statute cited by the taxpayer.

I think the majority opinion of the Board is wrong, and that the decision under review should be reversed and the determination of the Commissioner affirmed.