COMMISSIONER OF INTERNAL REVENUE v. SECURITY FLOUR MILLS CO.

SECURITY FLOUR MILLS CO. v. COMMISSIONER OF INTERNAL REVENUE.

Nos. 2556, 2589.

Circuit Court of Appeals, Tenth Circuit.

March 6, 1943.

Rehearing Denied May 22, 1943.

Fred Youngman, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Benjamin M. Brodsky, Sp. Assts. to the Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Robert C. Foulston and John F. Eberhardt, both of Wichita, Kan. (George Siefkin, of Wichita, Kan., on the brief), for Security Flour Mills Co.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This proceeding presents questions relating to income and excess profits taxes. The taxpayer was engaged in the manufacture and sale of flour, and was subject to the processing tax levied under the Agricultural Adjustment Act of 1933, 48 Stat. 31, 7 U.S.C.A. § 601 et seq. During the period which is material here more than half of its sales of flour were made under the Miller's Federation Uniform Sales Contract. The sales were at a stated price per barrel which included the usual items of cost, a normal profit, and a sufficient amount to cover the processing tax. The invoices reflected the contract price but did not show the tax as a separate item. The taxpayer secured a temporary injunction, effective from May 1, 1935, restraining the further collection of the tax, on condition that it file informational returns and deposit in a designated bank a sum equal to the amount of the tax, computed according to the act. Up to December 1, 1935, the taxpayer deposited in the bank sums aggregating $93,974.40; and it accrued on its books as a liability for the processing tax, but did not pay either to the collector or the depository, the sum, of $9,896.66, plus the additional item of $1,183.64, representing a reserve for possible increases in the tax for prior years. In January, 1936, the processing tax provisions in the act were held invalid, United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914; and in February, thereafter, the sum deposited in the bank was returned to the taxpayer. Certain vendees of flour sought to intervene in the injunction proceeding and assert rights in the impounded funds, but the taxpayer resisted and the petitions were denied. After the impounded funds had been returned to the taxpayer, certain vendees instituted suits against it to recover amounts equal to the processing tax on flour purchased while the injunction was in force, but the taxpayer defended and the actions were finally dismissed. In 1936, the taxpayer credited the money which the bank returned to it to an account on its books designated "Reserve for Processing Tax, Claims, etc." The account bears credits aggregating $105,254.70, and debits of an equal amount, the last debit being a transfer to surplus of $30,-289.99, made in June, 1939. In 1936, 1937,

and 1938, the taxpayer disbursed to certain of its vendees on shipments of flour made while the injunction was in effect sums aggregating $45,865.90. No refunds were made to the other purchasers during that period. The taxpayer kept its books and made its tax returns on the accrual basis. In its return for 1935, it made deductions which included the funds impounded in the depository and the funds accrued on its books as processing taxes but not impounded or paid to the collector. The Commissioner disallowed the deductions of these items. The Board of Tax Appeals ruled that the sums which the taxpayer received from its vendees to cover the processing tax constituted gross income for the year 1935, and that the amounts disbursed in 1936, 1937, and 1938, should be carried back and allowed as deductions for the year 1935. The Commissioner sought review from that part of the decision allowing the deductions in that manner.

Like all other revenue acts enacted since the adoption of the Sixteenth Amendment, the Act of 1934, 48 Stat. 680, assessed the taxes on the basis of annual periods, either the calendar year, or, at the election of the taxpayer, a fiscal year; and section 23(a), 26 U.S.C.A. Int.Rev.Code, § 23(a)(1), authorized the deduction from gross income of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.

■ The production of revenue ascertainable and payable at fixed intervals is the essence of any feasible system of taxation. It is the essence itself of any general scheme for taxing income as a means of producing a regular flow of income. Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S.Ct. 150, 75 L.Ed. 383. Where accounts are kept and returns made on the accrual basis, income is to be accounted for in the year in which it is realized, even though not actually received; and deductions are to be taken in the year in which the items deducted are incurred, whether actually paid or not. Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725. Revenue received under claim of right without restriction in respect of its use or disposition constitutes taxable income, even though the one receiving it may thereafter be adjudged liable to restore it or its equivalent. North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; Brown v. Helvering, supra; Saunders v. Commissioner, 10 Cir., 101 F.2d 407; London-Butte Gold Mines

Co. v. Commissioner, 10 Cir., 116 F.2d 478. And ordinarily where the accrual system is used in keeping books of account and making income tax returns, deductions may be claimed for the year the accrual of liability occurred, or not at all, even though the transaction or transactions giving rise to the accrual of liability may have taken place in an earlier year. Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733. Losses suffered or expenses accrued in a later year may be deducted from earnings in that year. But the tax on the income of a given year may not be withheld or diminished because losses may subsequently occur or expenses be later accrued. Heiner v. Mellon, 304 U.S. 271, 58 S.Ct. 926, 82 L.Ed. 1337.

■■ Here the taxpayer received from its vendees amounts equal to the processing tax on flour sold during the period in which the injunction was in force. It made no promise or contractual obligation to repay or refund any or all thereof in the event the act was declared unconstitutional, or otherwise. It stated to some purchasers of flour that it would treat them fairly, but it carefully and painstakingly avoided making any binding commitment to restore to them any of the fund or its equivalent. It was not legally liable to them for any of it, Moundridge Milling Co. v. Cream of Wheat Corp., 10 Cir., 105 F.2d 366; and after the declared invalidity of the processing tax statute, it bore no liability to the fiscus for any part of such fund, Rickert Rice Mills v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 80 L.Ed. 513. But it became entitled to the money and actually received it in 1935 under claim of right without legal restriction as to its use and disposition, and it therefore constituted taxable income in that year. North American Oil Consolidated v. Burnet, supra; Brown v. Helvering, supra; Saunders v. Commissioner, supra.

■ Section 43 of the Revenue Act, supra, 26 U.S.C.A. Int.Rev.Code, § 43, is relied upon as authorizing the relation back of the amounts disbursed to the year 1935. The pertinent part of the section provides that "deductions and credits * * * shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period."

A substantially identical provision first appeared as section 200(d) of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Code, § 43, and is to be found in all later revenue acts. In explaining the provision in the Act of 1924, the report of the Committee on Ways and Means of the House stated:

"The Revenue Act of 1921 * * * authorizes the Commissioner to allow the deduction of losses in a year other than that in which sustained when, in his opinion, it is necessary to clearly reflect the income. The proposed bill extends that theory to all deductions and credits. The necessity for such a provision arises in cases in which a taxpayer pays in one year interest or rental payments or other items for a period of years. If he is forced to deduct the amount in the year in which paid, it may result in a distortion of his income which will cause him to pay either more or less taxes than he properly should."

The report of the Senate Committee on Finance was identical. These reports make it clear that the legislative intent and purpose of the "unless" provision was to authorize the exception to the general rule in cases in which the taxpayer pays in one year interest, or rental, or other items for a period of years, and to other instances of that character, in order to prevent distortion of income of the taxpayer. It is manifest that Congress had in mind for application of the provision only instances in which a taxpayer receives income or makes expenditures in one year which are attributable to or related to business operations extending over a number of years. The distortion in income sought to be avoided is that which would result from charging a taxpayer with income received in a single year but in fact earned over a period of years, or permitting him to take in one year deductions actually attributable to operations extending through two or more years. To permit that would not fairly reflect annual income. Instead it would amount to distortion of income. The provision comes into operative play in instances of that kind. It was never intended to go beyond that scope. These transactions were not of that kind. All of the income was fully earned in 1935. No part of it extended over a period of years. The expenditures were not for interest, or rental, or other items of that kind covering a period of years. They were not in liquidation of any previously accrued legal obligation. They were voluntarily made for the primary purpose of retaining the good will of customers; and the liability was accrued and discharged, all after 1935. In short, neither the income nor the respective disbursements were attributable to operations extending over two or more years. Instead each was effected and completed in a single year. For these reasons the taxpayer does not bring itself within the "unless" clause in the statute. The amounts disbursed were deductible from gross income in 1936, 1937, and 1938, respectively; but not from that of 1935. North American Oil Consolidated v. Burnet, supra.

The taxpayer places strong reliance on Helvering v. Cannon Valley Milling Co., 8 Cir., 129 F.2d 642. Assuming for the moment that disbursements of this kind may be related back in certain circumstances, though we think otherwise, the two cases are distinguishable. There apparently all the facts were before the court, and it was held that unless the disbursements were related back income would be distorted with resulting injustice to the taxpayer. Here the return of the taxpayer for 1937 disclosed a net loss, computed by including in the deductions claimed a sum representing the amounts paid in that year to vendees of flour. But the returns for 1936 and 1938 were not introduced in evidence, and there was no showing whatever in respect of gross or net income for those years. Therefore, considering 1935, 1936, 1937, and 1938, together, as they should be considered, there is no basis for the conclusion that the deductions must be related back in order to clearly reflect the income and deductions, and to prevent distortion of income, within the meaning of the statute.

■ Title III of the Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A. Int.Rev. Code, § 700 et seq., imposes a tax on unjust enrichment arising out of the nonpayment of processing taxes, the burden of which has been shifted to others; and Title VII, 7 U.S.C.A. §§ 623, 644 et seq., authorizes refunds for amounts paid as processing taxes. Section 506 of Title III provides that one who is liable for unjust enrichment taxes and who also has a claim for an amount paid as processing taxes may apply to the Commissioner for an adjustment of the two together; that the Commissioner may in his discretion consider them in that manner; that he may enter into a written agreement with the person for the settlement of the case by payment or refund as may be specified in

the agreement; and that the agreement shall be a final settlement of the liability for taxes and of the claim for refund, except in cases of fraud, malfeasance, or misrepresentation of material fact. The taxpayer filed a claim for refund of amounts paid as processing taxes before the date on which the injunction became effective. The Commissioner and the taxpayer proceeded under section 506 and reached a settlement of the liability for unjust enrichment taxes and of the claim for refund. The signed agreement provided that the whole matter should be finally settled by the taxpayer making payment of $16,405.33, and that amount was paid. The Board found that the computation made in connection with the agreement disclosed a net unjust enrichment tax liability for 1935, 1936, and 1937 of $36,880.21, a refund due of $20,474.88, and a net tax payable of $16,405.33, of which $2,649.25 pertained to a refund of processing taxes for 1935, and was allowed by the Commissioner in determining the deficiency. The Board concluded that such sum should be restored to income for the year 1935; and the taxpayer perfected a separate appeal from that part of the decision.

The question calls for little discussion. Section 506 is a clear mandate that an agreement entered into under its provisions shall be and constitute a final settlement of the liability for the tax and of the claim for refund, unless there was fraud, malfeasance, or misrepresentation of a material fact in connection with its execution. There is no suggestion that any lack of good faith occurred in connection with the execution of this agreement. The contract was a final settlement. And in view of the plain language of the statute, we fail to see any warrant for going behind it and restoring to income for 1935 any item or sum which was taken into consideration in reaching the settlement.

The order is reversed and the proceeding remanded to the Board.

PHILLIPS, Circuit Judge (dissenting).

The Security Flour Mills Company will be referred to as the taxpayer. The taxpayer kept its books on an accrual basis.

Section 23 of the Revenue Act of 1934 in part provides:

"In computing net income there shall be allowed as deductions: * * *

"Taxes paid or accrued within the taxable year, * * *."

The question presented is not whether the entire amount received from sales of flour by the taxpayer, including the amount embraced in the composite price to cover processing taxes, was income to the taxpayer in 1935. Manifestly it was. We are concerned rather with a deduction of taxes accrued under an unconstitutional statute, the validity of which was not determined until a subsequent year; and the deduction of amounts returned by the taxpayer to its purchasers.

While it has been held that an unconstitutional statute is void ab initio,[1] the rule is not without certain qualifications. In Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329, the court said:

"It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination."

See, also, Phipps v. School District of Pittsburgh, 3 Cir., 111 F.2d 393, 395.

The taxpayer here certainly was under compulsion while the validity of the Agricultural Adjustment Act remained undetermined to accrue the tax liability and provide funds for its discharge throughout the entire year of 1935.

I, therefore, conclude that the taxpayer, in its income tax return for 1935, had the right to deduct as taxes accrued in 1935, the $93,974.40 which it accrued on its books for processing tax liability for the period

[1] Norton v. Shelby County, 118 U.S. 425, 442, 6 S.Ct. 1121, 30 L.Ed. 178; Chicago, I. & L. R. Co. v. Hackett, 228 U.S. 559, 566, 33 S.Ct. 581, 57 L.Ed. 966.

May 1, to November 30, 1935, and paid to the depository, and the $9,896.66 which it accrued on its books, for processing tax liability for December, 1935, but did not pay to the depository. This view is supported by Davies' Estate v. Commissioner, 6 Cir., 126 F.2d 294, certiorari denied Oct. 12, 1942, 63 S.Ct. 32, 87 L.Ed. ——, and J. A. Dougherty's Sons, Inc., v. Commissioner, 3 Cir., 121 F.2d 700.

Thereafter, when on January 6, 1936, the Agricultural Adjustment Act was declared unconstitutional in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, it became the duty of the taxpayer to accrue on its books as income for 1936, the $93,974.40 in the hands of the depository and the $9,896.66 accrued for processing taxes for December, 1935. See Nash v. Commissioner, 7 Cir., 88 F. 2d 477.

It has been held, however, that the Commissioner may cancel a deduction taken in one year for a tax which the taxpayer has accrued or paid, when the tax has been refunded in a later year because it was unlawfully imposed.[2]

However, if what occurred in 1936 is to be related back to 1935, then it would seem that the payments made to customers by the taxpayer in 1936, 1937, and 1938 should likewise be related back to 1935, under the provisions of Sec. 43 of the Revenue Act of 1934, 48 Stat. 694, 26 U.S.C.A. Int.Rev.Code, § 43.[3] Otherwise, the actual income of the taxpayer for 1935 will not be clearly reflected.

I cannot agree that the broad language of the "unless" provision in Section 43 should be narrowly limited to cases where "the taxpayer pays in one year interest or rental or other items for a period of years." The provision is couched in general terms and it contains nothing to indicate that its meaning was to be so limited. Rather, it justifies the interpretation that it is intended to apply to all deductions where its application is necessary to truly reflect the income.

Throughout the calendar year 1935, the taxpayer, from a realistic point of view, was under compulsion to regard the Act as subjecting it to a tax of $1.38 per barrel of flour processed. The selling price consisted of the usual items of cost, plus a normal profit, and included, in addition, an amount sufficient to cover the processing tax. The result was that the taxpayer's apparent gross income for 1935 was enhanced by approximately $100,000. This unnatural increment to gross earnings was due entirely to invalid processing taxes. As of December 31, 1935, it was offset by an accrued liability for processing taxes. However, on January 6, 1936, the Agricultural Adjustment Act was adjudicated unconstitutional and the taxpayer's processing tax liability was absolved. Thereupon, business necessity required that the taxpayer reimburse its vendees for taxes collected from them as a part of the sale price of flour if it could do so and not become liable for unjust enrichment taxes thereon. In 1936, 1937, and 1938, after the taxpayer had obtained a ruling on its unjust enrichment liability from the Treasury, it repaid to its vendees, $45,865.90, in compromise of claims asserted by such vendees. Obviously, these payments had absolutely no relation to the cost of earning income in the years of payment. Equally apparent is the fact that they had direct relation to the taxpayer's 1935 gross income. They represented refunds to vendees of amounts paid to the taxpayer in 1935 as a part of the sale price of flour because of the processing tax. They, in fact, resulted in a reduction of taxpayer's gross income from 1935 sales. Only by relating them to the year 1935 can the income for that year be truly reflected. It seems to me that it was to relieve against just such a situation that Sec. 43 was enacted. The following from the opinion of the Eighth Circuit, in Helvering v. Cannon V. M. Co., 129 F.2d 642, 646, is apposite:

"Application. In the months of May and June, 1935, this taxpayer collected the processing tax as a part of its sales prices. In

---

[2] See Ben Bimberg & Co. v. Helvering, 2 Cir., 126 F.2d 412, 413; Inland Products Co. v. Blair, 4 Cir., 31 F.2d 867; Leach v. Commissioner, 1 Cir., 50 F.2d 371; Bergan v. Commissioner, 2 Cir., 80 F.2d 89.

[3] Section 43 of the Revenue Act of 1934, 48 Stat. 694, in part, reads:

"The deductions and credits * * * provided for in this title [chapter] shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * *"

its tax return for that year, the amount of such collections was included in its gross income and was entirely offset by a claimed tax deduction. The result was that the collections had no effect upon its net income. Three years later, the Commissioner redetermined the tax by disallowing the deduction. Since this disallowance left the gross income (which included the collections) undisturbed, the result would be that the net income would be increased by the amount of the collections. It was not until 1936 that the contingency (validity vel non of the A. A. Act) was resolved and the right of taxpayer to the accrued income from the collections was determined. Therefore, the disallowance by the Commissioner was a relation back to the tax year 1935 of an accrual which had become fixed in a later year. At the time of the redetermination, it was established that only a part of the collections had remained the property of the taxpayer and a part of its income. All that taxpayer seeks is to have related back from 1937, the disbursements which reduced the collections in order that its net income for 1935 will be 'clearly' and truly stated. Both the deduction and the reimbursements relate to the same transactions in 1935. Clearly, to disallow the deduction and to refuse the decrease thereof by the reimbursements will distort the taxable income for that year. To permit the Commissioner to open up the item of deduction only to the extent it serves his purposes and to deny the taxpayer the effect of the reimbursements affecting the same item resulting in its paying a higher tax than it justly owes is an injustice to the taxpayer."

With respect to the second issue determined by the Board, for like reasons it seems to me the item of $2,649.25 should be treated as income in 1935. I do not think the closing agreement precludes an examination of the factual situation upon which it was predicated.

One subsidiary question remains: Non-compliance by the taxpayer with Art. 43 (1), Tr.Reg. 86, promulgated under the Revenue Act of 1934. In the first place, there was no occasion for the taxpayer to claim in its subsequent returns the deductions which it had taken in its 1935 return. In the second place, the rulings of the Commissioner fairly indicate that it would have been futile for the taxpayer to have claimed the deductions in its subsequent returns as of the year 1935. Finally, the issue was not raised at the hearing before the Board and that precludes its consideration here.[4] The case does not fall within the exception recognized in Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037, and Helvering v. Richter, 312 U.S. 561, 61 S.Ct. 723, 85 L.Ed. 1043.

For the reasons indicated I think the decision of the Board should be affirmed.

---

[4] New Amsterdam Cas. Co. v. Farmers Co-op. Union, 8 Cir., 2 F.2d 214, 218; New York Life Ins. Co. v. Doerksen, 10 Cir., 75 F.2d 96, 101; American Home Fire Assur. Co. v. Hargrove, 10 Cir., 109 F.2d 86, 87; Liberty Petroleum Co. v. California Co., 10 Cir., 114 F.2d 980, 981.