### UNITED STATES v. HARMON.
#### No. 4619.

United States Court of Appeals Tenth Circuit.

June 26, 1953.

Harry Marselli, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Louise Foster, Sp. Assts. to Atty. Gen., and Robert E. Shelton, U. S. Atty., Oklahoma City, Okl., on the brief), for appellant.

Roy C. Lytle, Oklahoma City, Okl. (D. I. Johnston, Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, United States Circuit Judges.

HUXMAN, Circuit Judge.

This case involves disputed income taxes for the year 1943. The taxes were paid and an action was instituted to recover them. The Government has appealed from an adverse judgment.

There is no dispute in the facts. So far as material, it may be stated that the Harmon Construction Company entered into contracts with the Federal Public Housing Authority for the construction of three housing projects.[1] One contract covered

1. While these contracts were made with the Harmon Construction Company, a co-partnership, it is conceded the tax liability is that of appellee, D. Allan Har-

projects Ark-3048 and Ark-3049 and the other covered project Ark 3-175. All of the contracts were of the type commonly known as cost plus fixed fee contracts. They were in the usual form of such con- tracts and provided for a fixed fee and for the advancement from time to time of the construction costs and also periodical pay- ments on the fixed fee. They provided that the Government should retain thirty per cent of the fixed fee "which 30% will be re- tained by the Government and paid to the Contractor upon a final acceptance of the work by the Government in accordance with Section 11 hereof." Section 11 pro- vided that "As promptly as practicable after the completion of construction work upon the contract and its final acceptance by the Government, the final production cost accrued in the performance of the contract shall be determined and the correctness thereof approved by such audit of the books of account of the Contractor and of those of all or such of its subcontractors, sup- pliers and servants as may be deemed ap- propriate by the Contracting Officer. As soon as practicable after the determination of the correctness of the final production cost, the then unpaid balance of the total contract price shall become due and payable to the Contractor."

The construction work on all three proj- ects was completed in the latter part of 1943 and on November 12, 1943, a certificate of completion was executed by the Harmon Construction Company, showing however outstanding and unpaid claims totalling $18,095.30. On about November 5, 1943, the project engineer executed a certificate of completion on projects Ark-3048 and 3049. The regional construction adviser, the regional attorney, the regional labor relations adviser and the assistant director of Region VIII executed the certificate on January 4, 1944. The project engineer ex- ecuted the certificate of completion on project Ark-3-175 November 7, 1943, and

the other enumerated officers executed the certificate on January 4, 1944. During the course of the construction work, the Gov- ernment verbally approved certain wage in- creases to be paid by subcontractors. These increases were reflected in the list of un- paid bills at the time the certificate of com- pletion was executed by the contractor. On December 30, 1943, a change order author- izing the increased wages was sent to Har- mon Construction Company and on Decem- ber 31 the company paid the subcontractors. On January 11, 1944, Harmon sent to the regional accountant claims for reimburse- ment for these amounts paid to the subcon- tractors and in February, 1944, the payment of such claims to the subcontractors was authorized. These claims were paid by the Government on February 13 and February 23, 1944. Sometime in 1944 final audits were made and the amount due Harmon was determined. As a result of this audit, the Government disallowed $276.78 for overcharges on the use of equipment and disallowed as non-reimbursable an item of $929.91. These amounts were deducted from the balance due Harmon on his re- tained fixed fee and on May 16, 1944, the remaining balance of the fixed fee was paid. It is this income which is in question in this litigation. The question is whether it should have been returned in Harmon's 1943 return or whether it was properly re- turned by him in his 1944 return.

Harmon kept his books and made his tax returns on an accrual basis. It is a well settled principle of law that where a taxpayer keeps his books and files his re- turns on the accrual basis, income is to be accounted for in the year in which it is re- alized, irrespective of when it is ultimately received. It is the right to receive and not the actual receipt of income that determines when income must be included in gross in- come for income tax purposes. When the right to receive income becomes fixed and absolute, the duty of one on the accrual basis to report it arises.[2]

mon, as though the contracts were be- tween the Government and him.

2. Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; Spring City Foundry Co. v. Commissioner, 292 U.S.

182, 54 S.Ct. 644, 78 L.Ed. 1200; Com- missioner of Internal Revenue v. Secur- ity Flour Mills Co., 10 Cir., 135 F.2d 165, affirmed, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725; Clark v. Woodward Con- struction Co., 10 Cir., 179 F.2d 176.

Measured by this standard, it cannot be said that during 1943 Harmon's right to receive a definite, certain amount of the retained fee had become fixed and final. At the end of 1943, Harmon's interest in the retained portion of the fixed fee was subject to proper set-offs and deductions, if any, which might be revealed by the final audits. A number of things remained to be done upon which the determination of that amount depended. The audits had not been completed. The outstanding claims had not been paid. Harmon's right to be credited with all these claims had not been finally determined. These matters were not determined until in 1944 and until that was done Harmon's interest in the amount of the fixed fee remaining in the Government's hands was not established with finality and certainty. As a matter of fact, the audit revealed that Harmon was not entitled to the full amount of the sum retained because certain deductions and certain disallowances were made and were deducted from the amount due him. True, the amounts deducted were relatively small but, until the final audit, it could not be determined whether much or little would be deducted or whether any amount would remain for payment to Harmon. An unconditional liability on the part of the Government to pay Harmon a fixed and definite sum did not arise in 1943. As pointed out, it could not arise until all audits had been completed and an adjustment with respect to claims had been made and this did not occur until 1944 and as a result no income tax liability arose with respect to the amount in question until in 1944.[3]

Affirmed.

PHILLIPS, Chief Judge (concurring).

It is my opinion that the acceptance of the work, not only by the project engineer, but by the regional construction adviser, the regional attorney, the regional labor relations adviser and the assistant director of Region VIII was a condition precedent, and had to be obtained to render the obligation to pay the balance of the fixed fee fixed and absolute. See 9 Am.Jur., Building and Construction Contracts, § 34, p. 24. For that reason, in addition to the reasons stated by Judge Huxman, it is my opinion that the judgment should be affirmed.

---

3. Lucas v. North Texas Lumber Co., 281 U.S. 11, 50 S.Ct. 184, 74 L.Ed. 668; Commissioner of Internal Revenue v. R. J. Darnell, Inc., 6 Cir., 60 F.2d 82; Commissioner of Internal Revenue v. Cleveland Trinidad Paving Co., 6 Cir., 62 F.2d 85.