**BREEZE CORPORATIONS, Inc.**
v.
**UNITED STATES.**
No. 49453.

United States Court of Claims.
Jan. 5, 1954.

Sydney A. Gutkin, Newark, N. J., David Beck, Newark, N. J., was on the brief, for plaintiff.

H. S. Fessenden, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Lee A. Jackson, and Joseph H. Sheppard, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

The plaintiff, who prepared and filed its excess profits tax return for the calendar year 1945 in accordance with the accrual method of accounting, seeks a refund of excess profits taxes for that year in the amount of $54,573.58 with appropriate interest thereon. The plaintiff accrued and included in gross income in 1945 an estimate of the amount it believed would be due from war contracts canceled in that year. Included in this estimate was a claim against American Bosch Corporation for $75,-796.65, representing part of the inventory believed to be allocable to the terminated portion of plaintiff's contract

·with that corporation. This claim was subsequently settled in 1949 for $22,-356.77. The plaintiff's claim for refund was disallowed by the Commissioner of Internal Revenue on the ground that the $75,796.65 had been properly accrued by plaintiff in 1945. After this suit was instituted the Government conceded that the original accrual in 1945 was incorrect in amount and stated that it should be adjusted to reflect the amount actually received by plaintiff. The plaintiff contends that the accrual and inclusion of all or any part of the $75,796.65 claim in 1945 was erroneous ·because there was no definitely fixed, determined and enforceable right in plaintiff for that or any reasonably ascertainable amount before settlement in 1949. The plaintiff further contends that if Regulation 111, Section 29.42–1, as amended by T.D. 5405,[1] and Mimeograph 5897[2] are applicable, they are invalid, upon facts such as we have here, insofar as they require accrual of a claim before the right to payment becomes fixed and the amount is reasonably ascertainable. The Government contends the accrual of $22,356.77 as income in 1945 is necessary in order to clearly reflect income for that year. To resolve these contentions requires a rather lengthy recitation of the facts.

The plaintiff reported as income in its income and excess profits tax return for the year 1945 the sum of $7,790,539.43, representing the gross value of its charges covering cancellation of war contracts received prior to December 31, 1945. In its return plaintiff reported an adjusted excess profits net income in the amount of $1,579,289.80. Included in the computation of its excess profits net income was the amount of $1,400,-000, of which $1,200,000 represented the amount estimated as of December 31, 1945, to be collectible over and above the inventory value of 1945 war contract cancellations. The balance of $200,000 represented estimated additional sales on contract terminations. Included in the $1,400,000 estimate was an estimate of the value of 1,167 pumps which subsequently became a claim against the American Bosch Corporation (hereinafter designated Bosch) in the amount of $75,796.65. This claim of $75,796.65, which is the center of the dispute in this case, had not been approved or allowed as to amount or allocability by the Navy Department (hereinafter designated Navy) or Bosch during the year 1945.

The claim involved the allocability of these 1,167 pumps to a contract under which Pratt & Whitney Aircraft was the prime contractor with Navy, Bosch was the first tier subcontractor and plaintiff was the second tier subcontractor. The plaintiff manufactured pumps of the kind in question for use in radio ignition shielding apparatus under a prime contract with Navy as well as under its subcontract with Bosch. Navy undertook the settlement of all of plaintiff's terminated contracts under the terms of the Contract Settlement Act of 1944.[3] After plaintiff submitted a list of physical inventories considered by it to be applicable to the terminated contracts, they were checked and it was determined that the 1,167 pumps were not properly allocable to the prime contract with Navy but might be allocable to the Bosch contract. Thereafter, on November 4, 1946, plaintiff presented its first formal claim against Bosch with respect to the 1,167 pumps, in the form of Settlement Proposal No. 4. On January 17, 1947, in accordance with the Contract Settlement Act of 1944, plaintiff and Bosch entered into a "Partial Final Settlement Agreement," reserving the right in Article 4 for the plaintiff to make further claim against Bosch or Navy with respect to the 1,167 pumps that were then the subject of negotiation with Navy under plaintiff's prime contract with Navy. The maximum amount of recovery as to these pumps

1. 1944 Cum. Bull. 154.

2. 1945 Cum. Bull. 131.

3. 58 Stat. 649, 665, 41 U.S.C.A. § 101 et seq.

was limited to $100,000, exclusive of interest thereon.

Immediately following the execution of the Partial Final Settlement Agreement of January 17, 1947, negotiations to bring about a settlement of the 1,167 pumps claim were commenced. By communication dated January 20, 1947, instructions were issued by Navy to its representative stating that before any settlement could be made with respect to the 1,167 pumps a determination of their allocability to the Bosch contract would have to be made.

In a Navy interdepartmental communication dated April 3, 1947 (Finding 19), it was stated that Navy was closing its files with respect to the plaintiff's claim for reimbursement for the 1,167 pumps because, in the opinion of Navy, plaintiff had not established its right to assert such a claim. The letter also stated that this decision had been conveyed to the contracting parties.

On May 6, 1947, Bosch wrote to plaintiff relative to the above interdepartmental communication, a copy of which had been received by Bosch (Finding 20). Bosch informed plaintiff that in accordance with the Navy's decision, Bosch considered the matter of plaintiff's claim finally closed.

In answer to a letter from plaintiff, Navy, on June 12, 1947, wrote to plaintiff and stated that plaintiff's claim had not yet been established; that its recourse was to be had up the contractual chain, and that Navy stood ready to expedite consideration of all claims established under the Contract Settlement Act, or otherwise.

At a conference in June 1947 plaintiff was again informed by Navy that it had no claim because the pumps were anticlockwise, whereas the Bosch contract required clockwise pumps. There was also some question as to the number of pumps ordered, which was subsequently decided favorably to plaintiff. Navy then referred plaintiff to Bosch. However, Bosch took the position that Navy was in charge of the settlement of the claim because Bosch had assigned plaintiff's contract to Navy for settlement and Navy was acting as Bosch's agent in the negotiations.

Sometime in 1948, after plaintiff had a conference with the Secretary of the Navy, another contracting officer was assigned to investigate plaintiff's claim against Bosch. Negotiations were had with this contracting officer and a settlement was finally reached on the basis of assigning the sum of $73 per pump for apparatus cost, less rework charge of $8 per pump for conversion from anticlockwise to clockwise operation, making a net amount of $65 per pump, which was applied to approximately 342 of the 1,167 pumps involved. The criterion used for application to only 342 of the pumps was not disclosed by Navy. On October 7, 1948, in accordance with the Contract Settlement Act of 1944, plaintiff and Bosch entered into a "Final Settlement Agreement" which was approved and allowed by Navy and plaintiff received payment of $22,356.77 from Bosch on February 4, 1949.

On November 24, 1947, plaintiff had filed a timely claim for refund of excess profits taxes paid by it for the year 1945. The claim was for $54,573.58 which represented the amount of excess profits taxes paid because of plaintiff's inclusion in its excess profits net income of the $75,796.65 Bosch claim. In making its claim for refund, plaintiff relied on the grounds asserted in this proceeding. The plaintiff's claim was disallowed on September 15, 1949.

The plaintiff contends that the accrual in 1945 of all or any portion of its claim against Bosch for payment of the 1,167 pumps was erroneous because the facts show that there was no definitely fixed, determined and enforceable right to payment of a reasonably ascertainable amount before final settlement in 1949. The plaintiff also contends that if Regulation 111, Section 29.42–1, as amended, and Mimeograph 5897 are applicable they are invalid insofar as they require accrual of a claim before there is a fixed right to payment of a reasonably ascertainable amount. The Government con-

tends that the accrual as income in 1945 of the $22,356.77 ultimately received by plaintiff in 1949, in settlement of its claim, is necessary in order to clearly reflect income for 1945, because the cost of the pumps which represented the claim was deducted as expense in 1945; the plaintiff actually estimated and accrued the claim in that year; it is only where the liability itself is in dispute that the accrual may be deferred until the question has been resolved and, therefore, since Bosch had not denied the claim in 1945 plaintiff had a fixed and undisputed right to payment in that year; Regulation 111, Section 29.42–1, as amended, and Mimeograph 5987 required accrual in that year; and because on the facts of the case plaintiff had a fixed right to a reasonably ascertainable amount in that year.

The applicable sections of the Internal Revenue Code, Sections 41 and 42 [4] respectively provide:

"The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer * * *.

"The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *".

The cases uniformly agree that before an item of income may be accrued, there must be a fixed, determined and enforceable right to receive a reasonably ascertainable amount.[5] This principle has its counterpart in the necessity of a fixed liability to pay a reasonably ascertainable amount to support an accrued deduction.[6]

We first consider the Government's contention that the accrual of the $22,356.77 as income in 1945 is necessary because the cost of the pumps was deducted as an expense in that year. Although it is a fundamental rule that returns reflect true income, and expenses should, where possible, be offset against income to which they were attributable, this does not devitalize the considerations leading to the holding in innumerable cases that before an amount can be accrued, there must be a fixed right to receive or obligation to pay a reasonably ascertainable amount. The Tax Court has held that the accrual of an item as income in a particular year is not required merely because the expenses attributable to that item were deducted from gross income in that year. Foster Wheeler Corp. v.

4. 26 U.S.C. §§ 41, 42.

5. United States Cartridge Co. v. United States, 284 U.S. 511, 52 S.Ct. 243, 76 L.Ed. 431; Continental Tie & Lumber Co. v. United States, 52 F.2d 1045, 72 Ct.Cl. 595, affirmed 286 U.S. 290, 52 S.Ct. 529, 76 L.Ed. 1111; Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 184, 54 S.Ct. 644, 78 L.Ed. 1200; United States v. Safety Car Heating & Lighting Co., 297 U.S. 88, 56 S.Ct. 353, 80 L.Ed. 500; Schoellkopf Aniline & Chemical Works v. United States, 3 F.Supp. 417, 77 Ct.Cl. 529; Lichtenberger-Ferguson Co. v. Welch, 9 Cir., 54 F.2d 570; United States v. Harmon, 10 Cir., 205 F.2d 919; C. A. Durr Packing Co., Inc. v. Shaughnessy, D.C.N.Y., 81 F.Supp. 33, affirmed per curiam 2 Cir., 189 F.2d 260, certiorari denied, 342 U.S. 850, 72 S.Ct. 78, 96 L.Ed. 641; Apex Electrical Mfg. Co. v. Commissioner, 16 T.C. 1171, affirmed per curiam 6 Cir., 202 F.2d 151; Foster Wheeler Corp. v. Commissioner, 20 T.C. — (promulgated April 6, 1953); Globe Corp. v. Commissioner, 20 T.C. — (promulgated May 7, 1953).

6. United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; Lucas v. American Code Co., Inc., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538; Lucas v. North Texas Lumber Co., 281 U.S. 11, 50 S.Ct. 184, 74 L.Ed. 668; Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270; Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725; Canton Cotton Mills v. United States, 94 F.Supp. 561, 119 Ct.Cl. 24; Hershey Creamery Co. v. United States, 101 F.Supp. 877, 122 Ct.Cl. 423.

Commissioner, 20 T.C. ——; Globe Corp. v. Commissioner, 20 T.C. ——. We agree with this holding.

■■ It is true, as the Government asserts, that plaintiff actually estimated and accrued the claim in 1945 but we do not deem that fact significant where, as here, plaintiff's right to receive all or any part of the amount so accrued was unsettled. Foster Wheeler Corp. v. Commissioner, supra.

The Government argues, citing Hershey Creamery Co. v. United States, 101 F.Supp. 877, 122 Ct.Cl. 423 as supporting authority, that it is only where the liability itself is in dispute that the accrual may be deferred until the question has been resolved, and therefore since Bosch had not denied the claim in 1945, plaintiff had a fixed and undisputed right to payment in that year. The Hershey Creamery Co. case, supra [101 F.Supp. 884], does not support that proposition. It held that where the *liability itself is definitely fixed* "the mere fact that the exact amount of liability has not been definitely fixed will not prevent the deduction so long as a basis exists by which the amount due could have been estimated within reasonable limits." The record herein indicates that in 1945 plaintiff had not reached the stage in its business operation of submitting or asserting the claim against Bosch. Consequently, it is difficult to comprehend how the failure of Bosch to deny the claim or dispute the amount thereof before it had even been asserted established a definite right in plaintiff to payment of the claim. It cannot be stated as a general rule that failure to deny a claim in a particular year requires that it be accrued in that year. When a fixed right to payment arises, is frequently dependent upon the facts of each case. We stated in Schoellkopf Aniline & Chemical Works v. United States, 3 F.Supp. 417, 77 Ct.Cl. 529, 539, that in order for income to be accrued there must be admitted liability arising on account of the transaction. We do not consider the failure of Bosch to deny the plaintiff's claim in 1945 established its right to payment of any reasonably ascertainable amount.

■ We come now to the Government's contention that Regulation 111, Section 29.42–1, as amended, and Mimeograph 5987 required accrual of the Bosch claim in 1945. The plaintiff contends that if the Regulation and Mimeograph are applicable they are invalid insofar as they require accrual of a claim before there is a fixed right to receive a reasonably ascertainable amount. The pertinent portion of the Regulation in question states:

"Except as otherwise stated in this subsection, such items as claims for compensation under canceled Government contracts constitute income for the year in which they are allowed or their value is definitely determined, if the return is filed on the accrual basis * * *. In the case of a termination of a war contract as defined by section 3 of the Contract Settlement Act of 1944 (or the termination of any other Government contract as to which the right to compensation is definitely fixed and the measure thereof is determinable with reasonable accuracy), if the return is rendered on a basis other than cash receipts and disbursements * * constitute income for the taxable year in which falls the effective date of the termination."

The applicable portion of the Mimeograph in question states:

"(2) Taxable Years Ending on or After July 21, 1944.

"In case a war contract is terminated within a taxable year ending on or after July 21, 1944, the income from the contract termination shall be included in computing gross income for the taxable year of the contract termination. * * *

"(3) Adjustment of Return.

"If the income from the contract termination which, under the above subparagraph * * * is to be taken into account * * * for

the year of the contract termination, is not definitely ascertained at the time of filing the return, the contractor shall include in his return a reasonable estimate of such income * * *. When the correct amount of such income from the contract termination is ascertained, an adjustment shall be made for the year for which such income was included. (Cf. Continental Tie & Lumber Co. v. United States, 286 U.S. 290 [52 S.Ct. 529, 76 L.Ed. 1111], [Ct.D. 494; C.B. XI–1, 260 (1932).])"

The Continental Tie & Lumber Co. case, supra, was relied upon by the Commissioner of Internal Revenue as authority for the promulgation of Mimeograph 5897 which applies Regulation 111, Section 29.42–1, as amended. That case dealt with the Transportation Act of 1920 which made the Federal Government liable to railroads that sustained a deficit due to the operation of the railroads by the Government. The Court held that the Act itself gave the taxpayer railroad a definite and fixed right to payment by the Government. The Court also stated that all that remained was a mere administrative procedure to ascertain the amount to be paid; that since the Interstate Commerce Commission required a standard and uniform system of accounting, the taxpayer was furnished with instructions as to how the amount should be calculated, and because the taxpayer had all the data necessary to ascertain the amount on its books of account, there was no reason why a reasonable estimate should not be made in the year that the right became fixed.

The tenor of the Regulation and Mimeograph seem to indicate they were predicated upon the assumption that the Contract Settlement Act of 1944 gave the subcontractors a fixed and enforceable right in the year the contract was terminated to a reasonably ascertainable amount for their claims. This assumption would be erroneous because the Act did not vest in the subcontractors any fixed right to be paid a reasonably ascertainable amount for their claims. The Act itself does not make the Government liable to subcontractors when the claim is of the nature involved in this case. Kal Machine Works, Inc. v. United States, 68 F.Supp. 436, 107 Ct. Cl. 202; Precision Metal & Machine Co. v. United States, 68 F.Supp. 437, 107 Ct. Cl. 219; Rumsey Mfg. Corp. v. United States Hoffman Machinery Corp., 2 Cir., 187 F.2d 927; Apex Electrical Mfg. Co. v. Commissioner, 16 T.C. 1171, affirmed, per curiam, 6 Cir., 202 F.2d 151.

The Apex Electrical Mfg. Co. case, supra, heavily relied on by plaintiff, is similar in many respects to the case at bar. There the taxpayer on the accrual basis had received about $290,000 in 1947 as final settlement of a claim for anticipated profits arising out of the cancellation in 1942 of a war subcontract. The Commissioner of Internal Revenue, pursuant to Regulation 111, Section 29.42–1, as amended, and another part of Mimeograph 5897, determined that the proper year for accrual was 1944. The Commissioner contended that the Contract Settlement Act of 1944 gave to the taxpayer a definite and fixed right to receive compensation and all that remained was a determination as to the amount, which could be estimated with reasonable accuracy in 1944. The Commissioner also contended that the Regulation and Mimeograph were in accord with the standard accrual accounting practice. In holding for the taxpayer the Tax Court said that the Commissioner's determination was contrary to the established general principles of accrual accounting as to accepted standard practices and also for tax purposes. The court further stated that the taxpayer did not have a fixed right aside from the Contract Settlement Act of 1944, and concluded, after a careful analysis of the Act, that its passage did not ripen in the taxpayer any fixed right to payment of its claim. The Tax Court further held that the amount was not capable of being estimated within reasonable limits until final settlement was reached in 1947.

The Regulation and Mimeograph could be construed to require the plaintiff to accrue the claim, in question here, in 1945 regardless of whether it had a fixed right to receive payment of a reasonably ascertainable amount in that year. But since the Contract Settlement Act did not ripen in the plaintiff a fixed and enforceable right to payment of a reasonably ascertainable amount as did the Transportation Act of 1920, the Continental Tie & Lumber Co. case, supra, would not be authority for such a construction.

Moreover, the decision of the Supreme Court in Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725, seems clearly to preclude the Commissioner from allocating the income to a taxable year other than the year in which a fixed right to receive or pay a reasonably ascertainable amount existed. The Court in discussing the purpose and narrow scope of the Commissioner's power to shift income and expense from one year to another stated, 321 U.S. at page 285, 64 S.Ct. at page 598:

"* * * But we think it was not intended to upset the well understood and consistently applied doctrine that cash receipts or matured accounts due on the one hand, and cash payments or accrued definite obligations on the other, should not be taken out of the annual accounting system and, for the benefit of the Government or the taxpayer, treated on a basis which is neither a cash basis nor an accrual basis, because so to do would, in a given instance, work a supposedly more equitable result to the Government or to the taxpayer. * * *

"The uniform result has been denial both to government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount."

Therefore, if we construed the Regulation and Mimeograph to require an accrual regardless of whether a fixed right to payment of a reasonably ascertainable amount existed in the taxable year, they would be invalid as an unauthorized and unreasonable exercise of the Commissioner's authority under Sections 41 and 42 of the Internal Revenue Code.

However, we believe that they can be construed to mean that a fixed right to payment of a reasonably ascertainable amount must exist as a condition to their application. Therefore the controversy resolves itself to the question of whether the plaintiff's claim represented a fixed right to payment of a reasonably ascertainable amount in 1945.

The estimate of the inventory believed by plaintiff to be allocable to the terminated portion of the contract had not been approved or allowed in 1945 by Navy or Bosch, as to its value, or allocability to the terminated contracts. The record clearly indicates that neither Navy nor Bosch approved or allowed its allocability until 1949 and then only to the extent of less than one-third of the original claim. Although it may seem, and the Government assumes, that the books of the parties should readily indicate whether the 1,167 pumps were allocable to the terminated contracts and consequently the right to payment of a reasonably ascertainable amount was present in 1945, this was not the case. The voluminous correspondence, the various conferences, the multiple partial settlement agreements, the complete denial at one time of the claim, and the continuous negotiations over a period of several years resulting in a settlement for less than one-third of the original claim sufficiently demonstrate that there was a serious dispute as to whether any or all of the pumps were allocable to the terminated contracts. Therefore, it is apparent that both the right to payment and the amount, if any, payable remained uncertain until settlement of the dispute in 1949.

We therefore conclude that the accrual in 1945 of any amount believed due

on the Bosch claim would have been erroneous because the plaintiff did not have a fixed, determined and enforceable right to a reasonably ascertainable amount in that year. The Government concedes that if we find the income was not properly accrued in 1945, the proper year of accrual would be 1949. Accordingly, the entire accrual of the Bosch claim for 1945 should be eliminated and the $22,356.77 actually recovered by plaintiff should be accrued and included in its gross income for 1949. The plaintiff is entitled to recover the excess profits taxes paid with the interest allowed by law on the $75,796.65 accrued and included as income in its 1945 tax return.

Entry of judgment is suspended pending the filing of a stipulation showing the amount that the Government is entitled to offset against the judgment because of the adjustment of the plaintiff's income tax for 1949.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.