**GARWOOD INDUSTRIES, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 25953.**

United States District Court, E. D. Michigan.

Nov. 5, 1969.

Dickinson, Wright, McKean & Cudlip, Detroit, Mich., for plaintiff, by George B. Martin and Edward L. Weber, Detroit, Mich.

Robert J. Grace, Detroit, Mich., Donald R. Anderson, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## AMENDED MEMORANDUM OPINION AND ORDER

KEITH, District Judge.

This is an Amended Opinion and Order modifying and supplementing the opinion of the Court rendered orally from the bench on April 22, 1969, immediately following oral arguments by the parties.

This action was initiated by Garwood Industries, Inc., to recover the payment of certain taxes with interest thereon which had been assessed by the Commissioner of Internal Revenue for the fiscal years 1951 and 1952. It is the position of the Government, defendant herein, that the taxpayer, who at the time maintained his accounting records on an accrual basis, derived the income on which these taxes were assessed in the years 1951 and 1952. Plaintiff, on the other hand, takes the position that the taxes were improperly and illegally assessed for the years 1951 and 1952, as the income did not accrue within those years, but instead accrued to plaintiff in 1956 when it was actually paid.

The parties have stipulated as to the facts from which the salient points have been sifted. It is agreed that the income in question resulted from plaintiff's performance of four contracts which it had entered into with the Army Corps of Engineers, for the manufacture and delivery to the Army of Crane-Shovels and related equipment. Each contract provided that:

> "The contractor shall be paid, upon the submission of properly certified invoices or vouchers, the prices stipulated herein for supplies delivered and accepted or services rendered and accepted, less deductions, if any, as herein provided. Unless otherwise specified, payment will be made on partial deliveries accepted by the Government when the amount due on such deliveries so warrants; or, when requested by the contractor payment for accepted partial delivery shall be made whenever such payment would equal or exceed either $1,000.00 or 50 per cent of the total amount of this contract."

In addition, each contract contained "special provisions" in which were contained "price redetermination" clauses which specified that the price set forth in each contract was subject either to increase or decrease and provided the manner in which such redetermination would be accomplished. However, subsection (f) of this price redetermination clause stated:

> "(f) *payment*:—Until new prices shall become effective in accordance with this provision, the prices in force at the effective date of the price revision *shall be paid* upon all deliveries, subject to appropriate *later revision* made pursuant to paragraph (d) or (e) or (g) (2) (B) of this provision." (Emphasis added).

In accordance with the terms of these contracts, plaintiff manufactured, delivered, and had acceptance by the Army Corps of Engineers, various pieces of equipment. It was the procedure that, upon delivery and acceptance of the merchandise by the purchaser, plaintiff would submit to the purchaser properly certified invoices which, at the outset, were promptly paid by the purchaser. In July, 1951, plaintiff submitted to defendant certain accounting data (required by contract to be furnished) nec-

essary for price redetermination. Thereafter, in October, 1951, the Corps of Engineers began withholding payments, which were due and owing, on merchandise which had been delivered and accepted, and on which plaintiff had submitted invoices. Apparently, plaintiff was not initially informed of any reasons justifying the withholding of funds, and numerous inquiries both oral and written regarding the amounts due and payable were met with little or no response from the defendant. Only after some time and many contacts did plaintiff become aware that the payments were withheld pursuant to an inter-agency policy of the Corps of Engineers as set forth in Memorandum No. 267 dated October 24, 1951, which memorandum stated the following:

"(1) In the future fiscal policy of this office with respect to the withholding of payments on contracts containing Price Redetermination provisions shall be as follows:

(a) The fiscal branch shall advise the Contracting Officer when 90% of the total contract amount has been paid and that no further payment will be made pending written notification from the Contracting Officer authorizing additional payments.

(b) In the event that cost information furnished by the contractor indicates that price redetermination will result in a higher price than that shown in the contract, the Contracting Officer, at his discretion, shall advise the Fiscal Branch that no payments under the contract should be withheld.

(2) Memorandum 256 dated 25 September, 1951 is hereby rescinded.

By order of the Acting Chief, Chicago Procurement Office."

It was pursuant to the above policy, apparently enacted by the Corps of Engineers without regard to any contractual arrangements, that the defendant began withholding payments in October, 1951.

At the end of the plaintiff's fiscal year in October, 1951, the amount withheld was $138,587.12; by the end of plaintiff's fiscal year in 1952, an additional $435,070.81 was being withheld making the total amount not paid to plaintiff at the end of the 1952 fiscal year $573,-657.93. It was not until after plaintiff had taken the matter before the Armed Services Board of Contract Appeal and had received favorable decision thereon in 1956 that payment on the amounts withheld was actually received by the taxpayer. Throughout the period between the dates of the invoices in 1951 and 1952, and the date of final payment in 1956, the parties had been in constant contact in an attempt to reach some agreement regarding price renegotiations; plaintiff insisted throughout the period of negotiations that the amounts mentioned above were due and owing from the date of delivery and acceptance of the various equipment, pursuant to the contracts, and therefore plaintiff continuously demanded immediate payment in full. Defendant continuously refused to pay the withheld amount "pending final price redetermination" relying for its authority on the inter-agency memorandum mentioned above. Plaintiffs thereupon took the position when the matter finally came before the Contract Appeal Board that interest on the amount being withheld should be considered in redetermining the contract prices as an allowable cost incurred; the Board, though awarding plaintiff almost the entire original contract price, denied this request for interest on withheld amounts.

The stipulated statement of facts entered into between the parties sets forth the manner in which plaintiff adjusted its books in the fiscal years 1951 and 1952, both for accounting and tax reporting purposes, to reflect the Corps of Engineers' withholding of payments. Briefly stated, plaintiff adjusted its books for 1951 so as to reflect a decrease in its revenue from sales by $25,000.00; therefore, its income tax re-

turn for the fiscal year 1950/51 reflected $25,000.00 less in gross sales than the amount originally recorded on its books prior to any adjustment. In other words, at the end of plaintiff's 1950/51 fiscal year, the actual amount of payments withheld, as mentioned earlier, was $138,587.12; of this withheld amount plaintiff reported only $113,587.12 as accrued income, adjusting the books so as not to report $25,000.00 of this withheld amount.

In 1952, plaintiff reported on its income tax returns for the fiscal year 1951/52 an amount for gross sales which was $648,476.18 less than the amount of gross sales originally recorded on its books prior to any adjustments for that year. Plaintiff's decision to reduce its gross sales figure by this particular amount ($648,476.18) resulted from additional withholding by the Corps of Engineers in that fiscal year as well as from calculations and estimates by plaintiff's accountants as to what the final reduction in the contract price allocable to its sales would be.

The amount of additional payments actually withheld by the Army Corps of Engineers within plaintiff's fiscal year 1951/52 was $435,070.81. (The total cumulative amount withheld at that point, therefore, was $573,657.93, i. e., $138,587.12 for 1951; and $435,070.81 for 1952). In view of this figure, it is apparent that the amount by which plaintiff then decreased its gross sales account for income tax reporting purposes (i. e., $648,476.18) exceeded the amount actually being withheld by the Corps of Engineers at the close of the 1951/52 taxable fiscal year, and therefore, that amount represented in part a reserve for estimated price reduction.

On March 30, 1956, in a decision by the Armed Services Board of Contract Appeal, plaintiff was awarded the greater amount of payments which, up to that point, had been withheld by the Army Corps of Engineers. Thereafter, the Internal Revenue Service completed its audit of plaintiff's 1950/51 and 1951/52 returns and increased the amounts of the gross sales which plaintiff had reported for the fiscal year 1950/51 by $25,000.00 and for the fiscal year 1951/52 by $648,476.18. A deficiency in taxes was assessed for each year; plaintiff paid the deficiency and brought this suit for refund.

It is the position of the Government, defendant herein, that plaintiff, by filing tax returns on an accrual basis, was required to report and pay taxes on the original amount of gross sales which were recorded in the Corporation's account books upon delivery and acceptance of equipment, and billing to the Army Corps of Engineers. Defendant, in its trial brief, states that the question presented by this case is: "Was the plaintiff entitled to eliminate from its gross income for federal income tax purposes its estimate of the amount by which the contract price of equipment and supplies sold to the Corps of Engineers during the year might subsequently be reduced under the contract's price redetermination clause?" In arguing that plaintiff was not entitled to eliminate amounts from its gross income for federal income tax purposes, the Government rules on Section 3806 of the 1939 Internal Revenue Code which stated:

"(1) Excessive profits eliminated prior taxable year.—In the case of a contract with the United States or any agency thereof, or any subcontract thereunder, which is made by the taxpayer, if a renegotiation is made in respect of such contract or subcontract and an amount of excessive profits received or accrued under such contract or subcontract for a taxable year (hereinafter referred to as "prior taxable year") is eliminated and, in a taxable year ending after December 31, 1941, the taxpayer is required to pay or repay to the United States Agency thereof the amount of excessive profits eliminated or the amount of excessive profits eliminated is applied as an offset against other

amounts due the taxpayer, the part of the contract or subcontract price which was received or was accrued for the prior taxable year shall be reduced by the amount of excessive profits eliminated."

The Government has cited to the Court numerous cases which have held that where a taxpayer on an accrual basis accrued upon its books amounts due which were subject to renegotiation, the income was subject to tax in the year of performance of the contract. In those cases, the taxpayers' argument that such amount was not accrued income until after the renegotiation, was rejected by the Courts, because it was said the very purpose of § 3806 of the 1939 Internal Revenue Code was to provide a scheme for handling such price reductions in computing taxes. The Government has also cited cases which hold that a taxpayer, having once accrued the income in question, is not entitled to set up a reserve for estimated price reductions and then deduct the amount of the reserve from gross sales for federal income tax purposes. See Junior Toy Corporation v. United States (1953), 116 F.Supp. 730, 126 Ct.Cl. 681; Portland Copper and Tank Works, Inc. v. Commissioner of Internal Revenue (1 Cir. 1965) 351 F.2d 460. In this regard, the cases cited state that once income has accrued, it must be reported, and, then Section 3806 of the 1939 Internal Revenue Code, prescribing the manner in which such renegotiation affects taxes, applied. Consequently, a taxpayer may not depart from the scheme of the Internal Revenue Code.

In the cases cited by the Government, it appears to have been the opinion of the Courts that the mere susceptibility of a definite, known amount to future renegotiation did not, of and by itself, allow for a finding that such income was not accrued. Those cases held that if an amount of income was accrued, then Section 3806 of the 1939 Internal Revenue Code provided the method of computing the tax credit on income subject to rene-

gotiation. Plaintiff has pointed out to the Court that in most if not all of the cases cited by the Government, the taxpayer had billed and *received* payments from the purchaser and was then attempting to circumvent the payment of taxes on the amounts received by claiming that the amounts received were not accrued income because they were subject to the contract renegotiation clause. Inasmuch as payments had been received by the taxpayer, the cases cited by the Government to support its position differ factually from this case presently before the Court in which payments were not received despite the clear language of the contract between the parties.

It is understood and appreciated that under the cases cited by the Government, the mere susceptibility of income to future price renegotiation was not enough to take the income out of the scope of the definition of "accrued income". But, to apply the mandates of § 3806 of the 1939 Code or to rely on cases interpreting that section prior to any determination as to whether or not under the facts of this case the income not reported was "accrued income" is to beg the entire issue now before the Court. As so accurately stated in the case of Holmes Projector Company v. United States (1952) 105 F.Supp. 690, 692, 123 Ct.Cl. 278, the application of general principles must rely on the peculiar facts involved in each case. The case presently before the Court involves more than an amount subject to future renegotiations, and more than plaintiff's apparent departure from the scheme of Section 3806 by "an attempt to handle the adjustment by claiming a deduction for a reserve for the recapture of excessive profits on Government Contracts." See Overlakes Corporation v. Commissioner of Internal Revenue (2 Cir. 1965) 348 F.2d 462.

The evidence presented to the Court in this case by way of voluminous exhibits as well as stipulated facts shows a contract which required payment upon delivery of the items ordered by and

produced for the Army Corps of Engineers, with subsequent renegotiation of those prices at some point after delivery and after payment of the amount specified in the contract. The Government, pursuant to its unilaterally enacted inter-agency memorandum No. 267, chose to ignore the payment terms of the contract and persisted in its dispute and opposition to plaintiff's right to receive the payments demanded upon delivery and acceptance of the merchandise. It appears to this Court, therefore, that neither the contract nor the billing of plaintiff prepared pursuant to that contract were governing the relationship between the parties as far as payment was concerned. However, while deviating from the payment provisions of the contracts, neither the Army Corps of Engineers nor the plaintiff anticipated any deviation from the renegotiation provisions of the contract. The Government, who concedes that payments were withheld, has never suggested that plaintiff was not bound by those renegotiation clauses found in each of the four contracts. The plaintiff, then, at the close of each of the fiscal years in question, found itself in the untenable position of having received no payment upon delivery of the merchandise as required by the contracts, but remaining bound to the renegotiation clauses contained in each contract. In view of defendant's departure from the contractual provisions as to payment, but at the same time continued enforcement of the contractual provisions as to renegotiation, at the close of each of the fiscal years in question, plaintiff had no certainty of ever receiving any "fixed amount" of income. In the case of Maryland Ship Building and Drydock Co. v. United States (1969) 409 F.2d 1363, 187 Ct.Cl. 523, the Court said:

> "With an accrual-basis taxpayer such as plaintiff, it is crystalization of the right to receive income, not prior expectation nor subsequent receipt, that determines the year in which income must be declared for federal tax purposes. Spring City Foundry Co. v. Commissioner of Internal Revenue, 292 U.S. 182, 184–185, 54 S.Ct. 644, 78 L.Ed. 1200 (1934). As this court observed in Breeze Corporation, Inc. v. United States, 117 F.Supp. 404, 407, 127 Ct.Cl. 261 [267] (1954), '* * * before an item of income may be accrued, there must be a fixed, determined and enforceable right to receive a reasonably ascertainable amount.'"

Here, because defendant chose to ignore the payment provisions of the contract, while enforcing the renegotiation provisions, there had been no crystalization of the right to receive income of a definite and ascertainable amount until the final decision of the Armed Services Board of Contract Appeal on March 30, 1965; consequently, there had been no accrual of income by plaintiff in the fiscal years 1951 and 1952. Notwithstanding the fact that there was a "fixed amount" and time for payments set forth within the provisions of the contract, such provisions had broken down, were ignored and resulted in no "fixed amount of income" to plaintiff.

In view of this, the amount actually withheld and not paid to plaintiff in the fiscal years 1950/51 and 1951/52 did not constitute accrued income within those years because the amounts were not then known, definite and ascertainable.

However, in the year 1950/51, of the $138,587.12 actually withheld, plaintiff chose to report as accrued income $113,587.12, which was all but $25,000.00 of the actual amount withheld; having done so, and having chosen not to file an Amended Return for the 1950/51 fiscal year, it is the opinion of this Court that it would not now be appropriate to provide plaintiff relief for that year beyond the $25,000.00 originally unreported.

In addition, it is the opinion of this Court that for the fiscal year 1951/52 plaintiff is entitled to recover only the amount actually withheld by the Army Corps of Engineers, i. e., $435,070.81. The additional amount not reported by plaintiff in the year 1951/52

represents, on one hand, an attempt to recoup the amount withheld by the Government but reported by plaintiff as accrued income for the 1950/51 fiscal year i. e., $113,587.12, as well as an attempt to set up a reserve for estimated price reduction. To the extent that the amount not reported by plaintiff in the 1952 fiscal year return represents an attempt to recoup payment of taxes on amounts actually withheld in the 1950/51 fiscal year, i. e., $113,587.12, taxpayer will not be allowed to accomplish such through its 1951/52 returns. To the extent that the amount not reported by plaintiff on the 1951/52 return represents an attempt to set up a reserve for estimated price reductions, the Court will deny such to be done, relying on the authority of those cases cited by the Government interpreting § 3806 of the 1939 Internal Revenue Code. (See Supra). At the same time, the Court is of the opinion that plaintiff's proper method of recovery is by way of refund of the taxes erroneously assessed; this entire matter arose out of defendant's refusal to refund those taxes and that, at present, is the sole issue before the Court. The question of set-off would involve an entirely separate matter which this Court is at present in no position to determine.

Accordingly for the reasons stated above, this Court holds that plaintiff is not required to include $25,000.00 in computing its taxable income for the fiscal year 1950/51 and is not required to include $435,070.18 in computing its taxable income for the fiscal year 1951/52; in other words this Court holds that plaintiff is not entitled to eliminate from its taxable income for 1951/52 the total amount of $648,476.18 because all but $435,070.18 of that amount constitutes accrued income.

It is further held that the judgment be made by way of refund to plaintiff of the excessive taxes paid and not by way of set-off against any taxes which may subsequently be assessed for 1956. The parties have stipulated that they will jointly compute the amount of judgment in accordance with the Court's opinion and will submit the computation to the Court, within 60 days from the date of this Order for approval and for entry of a judgment. If the parties cannot agree on the proper computation, the Court will determine the amount of the judgment, and, until such time, no final judgment shall be deemed to have been entered in this action.