**GAR WOOD INDUSTRIES, INC.,**
Plaintiff-Appellee,

v.

**UNITED STATES of America,**
Defendant-Appellant.

No. 20269.

United States Court of Appeals,
Sixth Circuit.

Jan. 28, 1971.

Janet R. Spragens, Atty., Dept. of Justice, Washington, D. C., for defendant-appellant; Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Thomas L. Stapleton, Attys., Dept. of Justice, Washington, D. C., on brief; James H. Brickley, U. S. Atty., Detroit, Mich., of counsel.

George B. Martin, Detroit, Mich., for plaintiff-appellee; Dickinson, Wright, McKean & Cudlip, Detroit, Mich., on

brief; Edward L. Weber, Detroit, Mich., of counsel.

Before WEICK and MILLER, Circuit Judges, and MURRAH,* Senior Circuit Judge.

MURRAH, Senior Circuit Judge.

The only question on appeal in this income tax refund case is whether, under undisputed facts, Gar Wood, an accrual basis taxpayer, should have included in its 1951 and 1952 income certain payments due under the terms of its government contracts but withheld by the Corps of Engineers pending redetermination of the contract prices. Gar Wood took the position that the funds unilaterally withheld pending final redetermination of the contract price in 1956 were taxable in that year and not before. The Commissioner disagreed and assessed a deficiency on the theory that the taxpayer's right to the funds crystallized in 1951 and 1952, even though no funds were received in those years and portions of the withheld amounts were never paid to Gar Wood. We affirm the trial court's judgment for the taxpayer.

Gar Wood Industries, Inc., entered into four contracts with the Corps of Engineers in the years 1951 and 1952 for the manufacture of crane shovels and related equipment. In addition to the usual provisions for periodic payments to the contractor during the course of performance, each contract contained a standard "Price Redetermination" clause. This clause authorized renegotiation of the contract prices by the parties after partial performance, provided for the settlement of disputes concerning the new prices and specified that "[u]ntil new prices shall become effective in accordance with this provision, the prices in force at the effective date of the price revision shall be paid upon all deliveries, subject to appropriate later revision * * *"

When two of the contracts were nearing completion in 1951, the Corps, pursuant to a policy not disclosed in the contracts,[1] began withholding amounts due Gar Wood in anticipation of the price redetermination. By the end of fiscal 1951 $138,587.12 had been withheld. Gar Wood included the withheld payments in income from sales for 1951 but reduced that sales figure on its tax return by $25,000, which it credited to an "unvouchered payables" account. In 1952 price redetermination talks began on two of the contracts and the Corps withheld an additional $435,070.11. On its tax return for 1952 Gar Wood reduced its income from sales, which had initially included all withheld payments, by $648,476.18, explaining that the purpose of this adjustment was "to set up an estimated price redetermination liability."

The parties were unable to agree on a redetermined price; and, as provided in the contract, the issue was submitted to the Contracting Officer of the Corps,

---

* Senior Circuit Judge of the Court of Appeals for the Tenth Circuit, sitting by designation.

1. This policy is contained in an internal Memorandum of the Corps, stating in part:

(1) In the future fiscal policy of this office with respect to the withholding of payments on contracts containing Price Redetermination provisions shall be as follows:

(a) The fiscal branch shall advise the Contracting Officer when 90% of the total contract amount has been paid and that no further payment will be made pending written notification from the Contracting Officer authorizing additional payments.

(b) In the event that cost information furnished by the contractor indicates that price redetermination will result in a higher price than that shown in the contract, the Contracting Officer, at his discretion, shall advise the Fiscal Branch that no payments under the contract should be withheld.

The parties agree that this language was intended to set forth a policy of withholding payment of the last 10% of the contract price where it seemed probable that the contract price would be renegotiated downward.

who in 1954 reduced the original contract prices by $790,069.00. In 1956, on appeal to the Armed Services Board of Contract Appeals, the contract prices were finally reduced by $34,760 and Gar Wood's claim to interest on amounts withheld by the Corps in excess of that reduction was rejected. The Corps then paid to Gar Wood the amounts withheld in excess of the price reduction and these sums were included in Gar Wood's 1956 return.

The Commissioner determined that all payments due under the contracts, including those withheld, should have been included in Gar Wood's income tax return for the years 1951 and 1952. An adjustment to Gar Wood's corrected income was then allowed under Section 3806, Int.Rev.Code of 1939, reducing income by an allocable portion of the Board-determined price reduction of $34,760. Gar Wood paid the additional taxes as calculated by the Commissioner and brought this suit for a refund.

Obviously Section 3806 would not permit Gar Wood to reduce its income from government contracts in 1951 and 1952 in order merely to set up a reserve for future price renegotiation liability, Portland Copper & Tank Works, Inc. v. Comm'r, 351 F.2d 460 (1st Cir. 1965), affirming 43 T.C. 182; Overlakes Corp., 41 T.C. 503 (1964). But the question we face is the more basic one whether the withheld payments were income to Gar Wood under principles of accrual accounting. The parties agree that the test of includability in gross income is the accrual basis taxpayer's fixed right to the funds, Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934); Spring City Foundry Co. v. Comm'r, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200 (1934). Thus, if in 1951 and 1952 Gar Wood had "a fixed determined and enforceable right" to receive "reasonably ascertainable" amounts under the contracts, Breeze Corp., Inc. v. United States, 117 F.Supp. 404, 407, 127 Ct.Cl. 261 (1954), cited in Maryland Shipbuilding & Drydock Co. v. United States, 409 F.2d 1363, 1366, 187 Ct.Cl. 523 (1969), those amounts should have been included in income for those years.

Judge Keith determined that Gar Wood had no fixed right to the funds in the years in question and to the extent Gar Wood's deductions represented amounts withheld by the Corps they were properly excluded from gross income.[2] We agree with this conclusion.

The government characterizes the amounts withheld as "security" pending price redetermination and likens this case to Comm'r of Internal Revenue v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959), and Clark v. Woodward Constr. Co., 179 F.2d 176 (10th Cir. 1950). *Hansen* said that the retention by finance companies of a percentage of the price paid for commercial installment paper did not prevent those amounts credited to "dealer reserve accounts," from being accruable income to the dealers, since these amounts were eventually either paid to the dealers or applied against the dealers' obligations as endorsers, guarantors or contractual sellers. The dealers had a fixed right to the sums at the time they were credited to the reserve accounts

---

2. No exclusions from income were allowed for amounts withheld but not deducted or for amounts deducted in excess of amounts withheld. In fiscal 1951 $138,-587.12 was withheld but only $25,000 deducted. The court concluded it would be inappropriate to allow Gar Wood, who had voluntarily reported $113,587.12 of the amount withheld and filed no amended return, to exclude more than $25,000 from income.

In 1952 $435,070.81 was withheld and $648,476.18 was deducted from sales income. The court characterized the excess deduction of $213,405.37 as an attempt either to recoup withheld amounts reported in the prior year or to set up a reserve for estimated price reductions and disallowed it in either case. See Holmes Projector Co. v. United States, 105 F.Supp. 690, 123 Ct.Cl. 278 (1952); Junior Toy Corp. v. United States, 116 F.Supp. 730, 126 Ct.Cl. 681 (1953); Portland Copper & Tank Works, Inc. v. Comm'r, *supra*; Overlakes Corp., *supra*. No question is raised on appeal concerning this aspect of the district court's decision.

and were clearly required to accrue them as income. In *Clark* a state highway contractor received only 85% of the contract price in the year in which the work was completed; the balance was withheld by the state until the next year as security for possible claims against the contractor by third parties. As the Court of Appeals held, the taxpayer's fixed right to the fund from the state was established in the year the work was completed and the withholding provision only served to insure payment of the contractor's obligations to third parties.

We do not think that the Commissioner's attempt to bring this case within the rationale of *Clark* and *Hansen* is well taken. Unlike the contractors in the usual price redetermination contract, see, *e. g.*, Holmes Projector Co. v. United States, supra; Portland Copper & Tank Works, Inc. v. Comm'r, supra; Overlakes Corp., supra, Gar Wood never had a fixed right to the full contract price. The Corps of Engineers' refusal to honor its contractual obligation to pay "the prices in force at the effective date of the price revision" negated whatever right to the withheld portion of the contract price Gar Wood otherwise had under the contracts in 1951 and 1952. The Corps consistently disputed Gar Wood's right to receive those funds until the final decision of the Armed Services Board of Contract Appeals in 1956. When the contract prices were redetermined in that year, the 1956 redetermination established for the first time Gar Wood's fixed and enforceable right to the withheld funds. The government cannot now claim that the breach of its contractual obligations made the withheld funds "security" for the performance of Gar Wood's obligations.

A more analogous fact situation is presented by United States v. Harmon, 205 F.2d 919 (10th Cir. 1953). There the government withheld 30% of the contract price to cover setoffs and deductions by the government which might be revealed by a final audit of the contract and the Court of Appeals held that the taxpayer's right to the money did not become fixed until it had been determined how much of the withheld funds would be paid to the taxpayer. And see Comm'r of Internal Revenue v. Cleveland Trinidad Paving Co., 62 F.2d 85 (6th Cir. 1932); Marquardt Corp., 39 T.C. 443 (1962). Like the taxpayer in *Harmon*, Gar Wood had no fixed right to the withheld payments until final adjudication in 1956 by the Armed Services Board of Contract Appeals redetermining the true contract price.

The judgment of the district court is affirmed.