A. Raymond Jones and Mary Lou Jones v. Commissioner. Drilling Accessory and Manufacturing Company, Inc. v. Commissioner.
Jones v. Commissioner
Docket Nos. 75149, 75196.
United States Tax Court
T.C. Memo 1960-115; 1960 Tax Ct. Memo LEXIS 180; 19 T.C.M. (CCH) 611; T.C.M. (RIA) 60115; May 31, 1960
*180 1. Petitioner, an individual accrual-basis taxpayer, received in 1952 a sum agreed upon in 1951 as final payment of a claim for additional compensation for work performed for the United States on a construction contract. Part of the claim was calculated on a cost-plus basis, and the entire payment was subject to final audit by the United States. Final audit and payment were not made by the Government until 1952. Held, the sum was properly reported when received in 1952 and did not constitute income in 1951. United States v. Harmon, 205 F. 2d 919, followed. 2. A judgment in favor of petitioner became final in 1953 in a suit against the United States for additional compensation for work performed in 1943 and 1944. Held, petitioner realized ordinary income in the amount of the net proceeds of the judgment in 1953. 3. Addition to tax for 1951 under section 294(d)(1)(A) sustained; addition to tax for 1951 under section 294(d)(2) disallowed; addition to tax for 1953 under section 294(d)(2) sustained. Wentworth T. Durant, Esq., Davis Building, Dallas, Tex., and Robert J. Hobby, Esq., for the petitioners. Carswell H. Cobb, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion Respondent has determined deficiencies in income tax and additions to tax under sections 294(d)(1)(A) and 294(d)(2), Internal Revenue Code of 1939, of petitioners A. Raymond Jones and Mary Lou Jones for the years 1951 and 1953, as follows: Additions to Tax
Sec.
Sec.
Year
Deficiency
294(d)(1)(A)
294(d)(2)
1951
$ 25,844.76
$3,128.52
$ 1,572.83
1953
202,886.26
12,354.68
The questions presented *182 as to these petitioners are: (1) Whether petitioners realized additional income in the amount of $40,254.28 in 1951, (2) whether the same petitioners realized additional income in the amount of $259,936.07 in 1953, and (3) whether the same petitioners are liable for additions to tax as determined by respondent. Respondent has determined a deficiency in income tax of petitioner Drilling Accessory and Manufacturing Company, Inc., for the taxable period May 1, 1953, to January 31, 1954, in the amount of $122,632.66, and for the fiscal year ended January 31, 1956, in the amount of $12,001.65. Respondent concedes that the deficiency of $122,632.66 against Drilling for its fiscal year 1954 is only in the alternative in case we should hold that the payment of $259,936.07 to petitioner from the Court of Claims judgment is not taxable to petitioners A. Raymond Jones and Mary Lou Jones. Findings of Fact Stipulations of facts, filed in both dockets, are included herein by this reference. Petitioners A. Raymond Jones and Mary Lou Jones, husband and wife, residing in Dallas, Texas, filed their returns for the years in issue with the district director of internal revenue, Dallas. (For convenience, *183 A. Raymond Jones is sometimes hereinafter referred to as the petitioner.) Petitioner Drilling Accessory and Manufacturing Company, Inc. (hereinafter referred to as Drilling), a corporation organized under the laws of the State of Texas on April 16, 1952, with principal office in Dallas, filed its returns for the periods in issue with the district director of internal revenue, Dallas. Drilling is engaged in the manufacture of oil field equipment. Drilling kept its books and records and reported its income on an accrual basis. During the year 1951 and in previous years petitioner engaged in the business of performing cement grouting work in the form of a sole proprietorship. In September 1950, petitioner entered into a contract with the United States Government to perform grouting and other work on a project known as the Fort Randall Reservoir. Petitioner completed his work on the Fort Randall Reservoir in August or September 1951. As a result of extra work he was required to perform, petitioner made claim for additional compensation, some of which was computed on a cost-plus basis. In October 1951, petitioner met with representatives of United States Army Corps of Engineers and *184 a tentative agreement of the sum due was reached. On November 1, 1951, the Corps of Engineers issued to petitioner a letter of completion and acceptance of the petitioner's work as of August 31, 1951. On December 14, 1951, an entry was made on petitioner's books crediting contract income in the amount of $40,254.28 for the Fort Randall contract. Subsequently, an entry dated December 31, 1951, was made reversing this entry. Petitioner did not receive final estimate based on final audit and check for the balance due him on the Fort Randall Reservoir job, $40,254.28, until sometime in 1952. This $40,254.28 accrued as income to petitioner in 1952 and not in 1951. In 1948, 1949, and 1950, petitioner's books and records were maintained on a cash receipts and disbursements basis. Petitioner filed no returns of income for those years. In 1951, petitioner's books and records reflected extensive accounts receivable and payable, notes payable, and accrued items were reflected in petitioner's income statement for 1951. Petitioner kept his books and records and reported income on an accrual basis in 1951. Petitioner's books and records for 1953 were maintained and his income reported on a cash *185 receipts and disbursements basis. Petitioner never requested or received permission of respondent to change his accounting method between 1951 and 1953. On April 22, 1943, W. C. Shepherd, trading as W. C. Shepherd & Company, entered into a contract with the Corps of Engineers for a construction project known as Cumberland Oil Field Protective Levee. On April 26, 1943, Shepherd subcontracted a portion of the work to petitioner. The work on the project was completed in 1944. In 1944, Shepherd submitted a claim to the contracting officer in charge of the project, claiming additional compensation due on the project in an amount of over $1,000,000. A part of such additional compensation claimed by Shepherd was due to petitioner for work performed as a subcontractor on the project. After many years had elapsed and after repeated appeals and negotiations, Shepherd commenced suit on these claims in the United States Court of Claims on May 9, 1949. On September 3, 1953, petitioner and Drilling executed a document entitled "Agreement and Assignment of Interest" concerning petitioner's claim against Shepherd. Under the terms of this document petitioner purported to convey to Drilling all *186 his rights, title, and interest to his claim against the United States of America and Drilling agreed to pay petitioner $10,000 and to pay any and all income tax obligations, together with interest and additions thereto, of Raymond and Mary Lou for the years 1948, 1949, and 1950. Raymond and Mary Lou filed a petition with the Tax Court contesting the deficiencies determined by the Commissioner for the years 1948, 1949, and 1950, in April 1953. These petitions were assigned Docket Nos. 47762 and 47763. The Tax Court's decisions in those cases were entered on June 29, 1956. No payments were made on the 1948, 1949, and 1950 tax liabilities of petitioner either by petitioner or Drilling during the period here involved. On July 13, 1953, the Court of Claims entered its decision in the Shepherd case. This decision of the court became final on October 11, 1953. The court in this decision determined that Shepherd was entitled to recover a total sum of $111,295.81 on his own behalf and the total sum of $339,677.98 for work performed by petitioner. After deducting a pro rata portion for expenses and attorney fees the amount recovered for petitioner was $259,936.07. Petitioner received this *187 amount on April 22, 1954, by check which he endorsed over and delivered to Drilling on the same day. Raymond and Mary Lou realized a profit from their business operations in the years 1941 and 1942 and income taxes were paid in those years. None of these taxes were refunded. By letter dated June 28, 1948, Raymond and Mary Lou were informed by the Treasury Department of the recomputation of their tax liability for the year 1945, based on a settlement reached at a conference. The statement attached to this letter reads in part as follows: "As a basis for settlement of your case for the year 1945 with no further contest you have agreed that in consideration for the eliminating from your net income of the amount of $54,607.51, all net operating losses for the years 1943, 1944, and 1946 if any net loss sustained in such year, and 1947, have been allowed as deductions and that no portion of loss for any of such years may be carried back or carried forward and again claimed or allowed as a net operating loss deduction." Settlement of petitioner's tax liability for the year 1945 was made on the basis outlined above. Petitioners failed to file a declaration of estimated tax for the *188 year 1951 and are liable for the addition to tax under section 294(d)(1)(A), 1939 Code. Petitioner substantially underestimated his tax for the year 1953 and is consequently liable for the addition to tax provided by section 294(d)(2) of the 1939 Code. Opinion BLACK, Judge: The first issue presented is whether petitioner realized additional income in 1951 in the amount of $40,254.28. The sum represents proceeds received and reported by petitioner in 1952 from a claim against the United States of additional compensation for extra work performed by petitioner on the Fort Randall Reservoir. A portion of this claim was for work performed on a cost-plus basis. Respondent has determined that petitioner maintained his books and records and reported his income in 1951 on an accrual method of accounting, that the sum was properly accrued on his books in 1951, and that the reversing entry on December 31, 1951, was improper. Petitioner contends (1) that his books and records were kept and income reported on a cash receipts and disbursements basis in 1951 and therefore the sum was not properly reportable until received in 1952, and (2) that the sum was not reportable until 1952 even if he *189 employed an accrual method of accounting. Petitioner's contention that he kept his books and records and reported his income on a cash receipts and disbursements basis in 1951 is not sustained by the record. He employed accounts receivable, accounts payable, notes payable, and accrued payroll taxes in his income statement. Petitioner appears to raise an issue of collateral estoppel as to the accounting method employed based upon our finding in A. Raymond Jones, 25 T.C. 1100, that petitioner kept his books and records in 1948, 1949, and 1950 on a cash basis. As we said in Charles P. Leininger, 29 B.T.A. 874, at 875: "Where the second case between the same parties or their privies is for a different cause of action, as is the situation in the instant proceedings, the earlier judgment is conclusive only as to the precise facts, rights, questions or issues adjudicated in the earlier case that are again the facts, rights, questions or issues presented for adjudication in the second case. * * *" What was adjudicated in petitioner's earlier case was the accounting *190 method he employed in earlier years. The accounting method employed by petitioner in 1951 has never previously been adjudicated, nor has he shown that the same method used in those earlier years was used in 1951. In Diamond A Cattle Co., 21 T.C. 1, affd. 233 F. 2d 739, we said at pages 4 and 5: "The petitioner, to support its contention that it has never used an accrual method, should show that its method is not an accrual method, or, at least, that in the majority of the most substantial items of income and deductions it is not an accrual method. Hygienic Products Co., 37 B.T.A. 202, affd. 111 F. 2d 330, certiorari denied 311 U.S. 665; Estate of Julius I. Byrne, 16 T.C. 1234, 1246; Schuman Carriarge Co., Ltd., 43 B.T.A. 880; Aluminum Castings Co. v. Routzahn, 282 U.S. 92. This is not a case in which the Commissioner has attempted to change a long established and consistently used method of accounting on the ground that it does not clearly reflect income or on any other ground. Instead he has merely insisted, as the law and regulations require, that the petitioner consistently *191 follow the method of its choice * * *" Petitioner here has made a change in 1951 in his accounting method voluntarily and without consent of respondent. In making his determination respondent has sought to impose consistency upon petitioner under the accounting method of petitioner's choice, thereby accepting the change and implying consent. See Fowler Bros. & Cox v. Commissioner, 138 F.2d 774. Petitioner's only evidence of treatment of income on a cash basis is the item here in issue. Because, as we will shortly note, we agree with petitioner's second contention that this $40,254.28 in any event did not accrue until 1952 is correct, that item does not interfere with our holding that petitioner's books and records were kept on an accrual basis in 1951. Accordingly, we have found that petitioner maintained his books and records and reported income on an accrual basis of accounting in 1951. As indicated above, we agree with petitioner's contention that the final payment on the Fort Randall Reservoir contract was properly reportable when received in 1952, although petitioner maintained his books and reported his income on an accrual basis in 1951. The payment represented *192 a claim for additional work, some of which was calculated on a cost-plus basis. Payment of the claimed amount was subject to a final audit prior to issuance of any check. This did not occur in 1951. Although the facts show that on November 1, 1951, the Corps of Engineers issued to petitioner a letter of completion and acceptance of the petitioner's work as of August 31, 1951, the amount still due petitioner under the contract was subject to final audit by the army audit agency. See Army Procurement Procedure, section 1-607 ("Audits of Procurement Contracts by the Army Audit Agency"), subsection 1-607.1 ("Cost - Reimbursement Type Contracts"). Petitioner's testimony was that the final estimate and audit and check for $40,254.28 representing this final payment were not received from the Government until in 1952. There is no testimony to the contrary. We find the situation indistinguishable in principle from that presented in United States v. Harmon, 205 F. 2d 919. We hold, therefore, that respondent erroneously determined that petitioner realized additional income in the amount of $40,254.28 in 1951. The second issue presented is whether petitioner realized additional *193 income in the amount of $259,936.07 in 1953 when judgment in his favor became final in the suit against the Federal Government on the Cumberland Levee contract. Petitioner contends that he did not realize income in the amount of $259,936.07 in 1953 because he kept his books and records and reported his income on a cash receipts basis. We have concluded that petitioner's books and records were maintained and income reported on an accrual basis in 1951. It is admitted that he never sought permission of respondent to change that method between 1951 and 1953. It is a regulatory requirement [1] that taxpayers obtain respondent's permission prior to any change in accounting method. Thus, respondent may reject any change made without his consent, absent a showing that the method used prior to the unauthorized change distorted income. Advertisers Exchange, Inc., 25 T.C. 1086, affd. 240 F. 2d 958. Consequently, respondent properly required petitioner to report his income in 1953 on an accrual basis. *194 Petitioner also claims that he is not taxable in any year on the proceeds of the claim against the Federal Government which he concededly received in 1954 because in 1953 he had transferred and assigned all his right and title to the claim to Drilling and that when the money was received by him in 1954 he paid it over to Drilling, and therefore the $259,936.07 was not taxable to him. Neither the delay in payment of the claim nor the necessity of resort to legal process to force payment changes the character of the proceeds. As was said by the court in Sanders v. Commissioner, 225 F. 2d 629, at 635, affirming 21 T.C. 1012: "If the sum had been paid when due, it would have represented ordinary income. The fact that the sum was recovered in a lawsuit or in settlement of a lawsuit does not change the character of the income regardless of the intervening time. The income must be considered in the light of the claim from which it was realized. * * *" "The money received was derived from a contract entered into in the course of [taxpayer's] business operations for profit. While it equalled, and in a loose sense was a return of, expenditures made in performing *195 the contract, still * * * the expenditures were made in defraying the expenses incurred in the prosecution of the work under the contract, for the purpose of earning profits." Burnet v. Sanford & Brooks Co., 282 U.S. 359, at 363. Thus, it is a vicissitude of the taxation of income, born of required annual reporting and payment, that income which, if received in the year in which produced, might be offset against expenses incurred in its production so as to create little or no tax liability, may be received in a year in which there are no offsetting expenses to reduce tax liability. Provisions of the law permitting employment of accounting methods to enable matching of income and expenses, or permitting the carrying forward and backward of net operating losses, mitigate the effect, but in no way modify the basic rule that "[when] amounts are received for goods or services, even though in a loose sense they reimburse expenses incurred, the receipts are true gross income and are taxable irrespective of the question whether the expenses were deducted or produced a tax benefit." See Plumb, "The Tax Benefit Rule Today," 57 Harvard Law Review 129. Indeed, Dobson v. Commissioner, 320 U.S. 489, *196 upon which petitioner so heavily relies, distinguishes its rule of law from that of the Sanford & Brooks Co. case in terms which clearly prevent application of the former to the instant case. Thus, at any time, petitioner's right against the Federal Government constituted a right to income. Any anticipatory assignment of income is ineffective to relieve the assignor of the tax burden upon the income. Helvering v. Horst, 311 U.S. 112; Commissioner v. P. G. Lake, Inc., 356 U.S. 260. Petitioner's contention that the claim represented a capital asset, disposal of which gives rise to long-term capital gain, is founded upon cases in which accrual basis taxpayers sold accounts receivable, accrual of which had been reflected in income for previous years. No showing was made here that such income was ever previously reported. We hold, therefore, that petitioner, on an accrual basis, realized ordinary income in 1953 in the amount of $259,936.07. Also, petitioners argue that even though we should hold against them on their contention that petitioner's assignment to Drilling did not relieve them from being taxed on the $259,936.07 in question, nevertheless they *197 are not taxable on the payment because it represents recovery of a loss as to which petitioners received no tax benefit. In making this contention petitioners rely on section 22(b)(12), [2] of the 1939 Code. Under section 22(b)(12) the taxpayer excludes the recovery from gross income to the extent of the "recovery exclusion." The recovery exclusion is, in effect, that portion of the recovery equivalent to the amount of the deduction or credit in the earlier year that did not result in a tax benefit to the taxpayer. *198 It seems to us that the facts in the record in this case do not bring petitioners within the recovery exclusion provisions of the 1939 Code. Our Findings of Fact show that petitioner had a tax liability in 1945 and that in the settlement of that liability, "As a basis for settlement of your case for the year 1945 with no further contest you have agreed that in consideration for the eliminating from your net income of the amount of $54,607.51, all net opertating losses for the years 1943, 1944, and 1946 if any net loss sustained in such year, and 1947, have been allowed as deductions and that no portion of loss for any of such years may be carried back or carried forward and again claimed or allowed as a net operating loss deduction." This would seem to indicate that petitioner has received tax benefits for all net operating losses which could effect the recovery of the $259,936.07. At any rate, petitioners have given us no facts upon which we could base a recovery exclusion allowable to the petitioners with respect to the $259,936.07 in question. Respondent has determined additions to taxes for the year 1951 against the individual petitioners under sections 294(d)(1)(A) and *199 294(d)(2) of the 1939 Code. Inasmuch as no evidence has been introduced on the issue, we sustain respondent's determination of addition to tax for 1951 under section 294(d)(1)(A). No declaration was filed for 1951 and on authority of Commissioner v. Acker, 361 U.S. 87, the concurrent imposition of addition to tax under section 294(d)(2) is held erroneous. Respondent has also determined addition to tax of individual petitioners for 1953 under section 294(d)(2) for substantial underestimate of estimated tax. Petitioners make no contention as to imposition of the addition save as it follows determination of additional income for the year. Addition to tax under section 294(d)(2) is sustained. Respondent in his brief concedes that if we should determine that the $259,936.07 received from the Court of Claims judgment is taxable to petitioners, it is not taxable to Drilling and that the deficiency against Drilling of $122,632.66 for the fiscal year ended January 31, 1954, should not be sustained. In view of this concession by respondent and our holding above, the deficiency of $122,632.66 against Drilling is not sustained. Respondent in his brief has stated: "In view of *200 certain concessions herein by the respondent and the fact that no error has been raised to certain of the adjustments in the deficiency notices a Rule 50 decision should be entered." Decisions will be entered under Rule 50. Footnotes
1. Regulations 118. § 39.41-2 * * *
(c) A taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. * * *↩
2. SEC. 22. GROSS INCOME. (b) * * *
(12) Recovery of Bad Debts, Prior Taxes, and Delinquency Amounts. - Income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount. * * *
(D) Definition of recovery exclusion. - The term "recovery exclusion," with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this chapter (not including the tax under section 102) or corresponding provisions of prior revenue laws, reduced by the amount excludible in previous taxable years with respect to such debt, tax, or amount under this paragraph.↩