BIZZACK BROTHERS CONSTRUCTION CORP., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bizzack Bros. Constr. Corp. v. Commissioner
Docket No. 9169-75.
United States Tax Court
T.C. Memo 1980-457; 1980 Tax Ct. Memo LEXIS 127; 41 T.C.M. (CCH) 173; T.C.M. (RIA) 80457; October 9, 1980, Filed Charles R. Hembree and Philip E. Wilson, for the petitioner. Warren R. Calvert, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: Respondent determined deficiencies in petitioner's Federal income taxes for the taxable years ended March 31, 1972 and March 31, 1973 in the amounts of $136,402.32 and $202,801.60, respectively. Subsequently, by an amendment to his answer filed in this case, respondent alleged that *128 the deficiency for the year ended March 31, 1973 should be increased to $217,891.37. Due to concessions by petitioner, the only issue presented for decision is whether petitioner, an accrual method contractor, must accrue amounts withheld on four construction contracts which were paid into an escrow fund by the Kentucky Department of Highways and invested in governmental securities pending completion and acceptance of the related construction projects. The facts of this case have been fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and the attached exhibits are incorporated herein by this reference and are found accordingly. The pertinent facts are summarized below. Petitioner (hereinafter also referred to as the Corporation) is a corporation organized and existing under the laws of the Commonwealth of Kentucky with its principal place of business located in Frankfort, Kentucky. The Corporation uses the accrual method of accounting and has a taxable year ending March 31. Its Federal corporate income tax returns for the taxable years ended March 31, 1972 and March 31, 1973 (hereinafter the 1972 and 1973 taxable years, *129 respectively) were filed with the Internal Revenue Service Center in Memphis, Tennessee. Throughout the taxable years in issue the Corporation was engaged in the general contracting business. During the period from March 1971 to July 1972 it was awarded four highway construction contracts by the Department of Highways of the Commonwealth of Kentucky (hereinafter referred to as the Department of Highways). The contracts are individually referred to by the parties as the Perry County 5-3 Contract, the Perry County 5-4 Contract, the Garrard-Jessamine Contract, and the Pike County Contract. Each contract referred to and incorporated therein by reference the Department of Highways Standard Specifications for Road and Bridge Construction and Department of Highways Special Provision No. 83 (hereinafter collectively referred to as Standard Specifications). Section 1.9.6(A) of the Standard Specifications provided that monthly progress payments were to be paid by the Department of Highways on the contract price, and that the amount of each partial payment was to be based upon monthly estimates of the value of the work performed and materials complete in place. The monthly estimates *130 were not to be considered as acceptance of any portion of the work performed. Ninety-five (95) percent of each partial payment was to be paid directly to the contractor; the remaining 5 percent was to be retained (i.e., "retainage") pending a final determination of the actual amount owed to the contractor upon completion of the project. The actual amount due the contractor could not be determined until (1) the work to be performed had been completed and accepted by the Department of Highways as in compliance with contract specifications, and (2) the Department of Highways and the contractor had agreed upon the actual quantity of each bid item used in construction and the amount of liquidated damages or other claims, if any, with the Department of Highways having the right to resolve finally any dispute as to the sum due. The contractor and the Department of Highways evidence their agreement as to the actual qnautities used in construction and the amount of any liquidated damages or other claims when the contractor executes Department of Highways FormTD 14-5, in which the contractor certifies that a specified sum will be accepted as full and final payment under the contract. *131 Each contract provided that retainage withheld under section 1.9.6(A) of the Standard Specifications could be withdrawn by the contractor upon the deposit of securities as authorized by Ky. Rev. Stat. Ann. sec. 176.095 (Baldwin) (hereinafter referred to as K.R.S. 176.095), and the rules and regulations issued thereunder by the Department of Highways. In general, K.R.S. 176.095 provides that where a percentage of a contract price is retained pursuant to law, the contractor may withdraw all or part of the retained amount by depositing with a custodian designated by the Department of Highways certain listed United States and Kentucky governmental obligations, with both a par value and market value on the date of such deposit equal to or greater than the amount of withdrawn. retainage. Concurrent with its execution of the contracts with the Department of Highways, the Corporation was required by the Department of Highways regulations to execute a document entitled "Contractor's Election as to Retainage" (hereinafter referred to as retainage election). The retainage election required the Corporation to select one of three methods for treatment of the retainage *132 funds. The first method was to deposit qualified securities with a custodian in order to withdraw the retainage. The second method was to elect to have a custodian purchase securities with the retainage funds for the Corporation's account. The third method was to elect not to withdraw the retainage until otherwise due under the Standard Specifications. The Corporation elected the second option. The election document for each contract was incorporated into and became a part of the contract between the Department of Highways and the Corporation in accordance with the Department of Highways regulations. The Winchester Bank (hereinafter referred to as the Bank) in Winchester, Kentucky was designated and approved as the custodian referred to in each election document. The Bank and the Corporationthen executed a standard Department of Highways form entitled "Escrow Agreement" with respect to each contract. Under the Escrow Agreement the Department of Highways was to deliver checks payable to the Bank for deposit in the Corporation's account. Upon receipt the Bank was required to invest the funds in certain listed United States or Kentucky governmental securities, the income from *133 which was required to be distributed to the Corporation on a regular basis. [1]
The Escrow Agreement further provided that the Department of Highways was absolutely entitled to demand the return of and receive the retainage plus interest, if any were earned after demand, if it, and it alone, determined that the Corporation was in default on the performance of its contract. Such entitlement would in no way be affected by a claim or assertion from the Corporation to the Bank disputing the Department of Highways' determination of default. According to the Escrow Agreement, the Bank would be released from its liability to the Department of Highways for the return of the retainage upon notification by the Department of Highways of the final acceptance of the project and of the Corporation's performance under the contract. The work to be performed under the contracts *134 was accepted by the Department of Highways as complete and in physical compliance with the applicable contract specifications on the following dates: Contract
Date
Perry County 5-3
11/8/72
Perry County 5-4
7/11/73
Garrard-Jessamine
10/1/74
Pike County
7/15/75
With respect to each contract the Corporation executed Department of Highways FormTD 14-5 (signifying agreement or acquiescence as to the final amount due under the contract) on the following dates: Contract
Date
Perry County 5-3
8/13/73
Perry County 5-4
4/19/75
Garrard-Jessamine
11/29/76
Pike County
2/20/76
During the 1972 taxable year the Bank received from the Department of Highways under the terms of the four Escrow Agreements a total of $284,171.51. During the 1973 taxable year the Bank received a total of $420,021.29. None of the amounts received were distributed to the Corporation until after March 31, 1973. In accordance with the terms of the contracts, the Department of Highways authorized the Bank to make partial and/or final releases of the escrowed funds as follows: [2]
*135 Date Partial
Amount of
Date Final
Amount of
Release
Partial
Release
Final
Contract
Authorized
Release
Authorized
Release
Perry County 5-3
8/28/73
$258,296.63
Perry County 5-4
5/13/75
316,219.63
Garrard-Jessamine
11/12/74
$96,536.77
12/8/76
96,662.04
Pike County
3/3/76
101,096.33
The Bank distributed these amounts to the Corporation approximately one to two months after the release authorizations were received. The Corporation included the distributions in gross income in the taxable year of receipt.
In his statutory notice o deficiency dated July 10, 1975, respondent increased petitioner's taxable income for the 1972 and 1973 taxable years to reflect the retainage received by the Bank in each year. Under respondent's original theory the retainage constituted gross income to petitioner at the moment the funds were paid into escrow. Now, however, respondent maintains that the retainage should not be taxed until the year in which it is actually invested by the escrow custodian. On a first-in, first-out basis the actual amounts invested by the Bank in the 1972 and 1973 taxable years were $246,431.70 and $451,458.32, *136 respectively. Accordingly, respondent has increased the amount of his deficiency for the 1973 taxable year by $15,089.77 to reflect retainage received by the Bank in the 1972 taxable year but not invested until the following year. [3]
Petitioner argues that the retainage need not be included in gross income until it is released from escrow when the construction work is completed and accepted. In support of its position petitioner relies primarily on our opinion in Iler v. Commissioner,T.C. Memo. 1978-182, where we held that a cash method taxpayer in a virtually identical fact situation had not constructively received the retainage at the time the funds were paid into escrow. Respondent maintains that Iler was wrongly decided and should not control our decision here. He further contends that petitioner was in actual receipt of the retainage at the moment the funds were invested pursuant to the terms of the Escrow Agreements. *137 By electing to have the retainage placed in escrow, respondent argues, petitioner became entitled to receive the income earned by the invested funds, and thereby exercised sufficient dominion and control over the amounts so as to require inclusion in gross income. We agree with petitioner. Accrual basis taxpayers are not taxed on income until all events have occurred which fix the right to receive such income and the amount can be determined with reasonable accuracy. Sec. 1.451-1(a), Income Tax Regs.; Spring City Foundry Co. v. Commissioner,292 U.S. 182, 184-185 (1934); Commissioner v. Hansen,360 U.S. 446, 464 (1959). In applying the all-events test to contract retainage, we have previously held that, where an accrual basis taxpayr was not entitled to the retainage until the construction project was completed and accepted, no accrual was required until those events had transpired. Dally v. Commissioner,20 T.C. 894, 899 (1953), affd. 227 F.2d 724 (9th Cir. 1955), cert. denied 351 U.S. 908 (1956); Marquardt Corp. v. Commissioner,39 T.C. 443, 456 (1962). A *138 similar conclusion was reached in United States v. Harmon,205 F.2d 919, 921 (10th Cir. 1953). The contract in that case also provided for release of retainage upon the final acceptance of the work performed. The actual amount to be surrendered was subject to adjustment for any set-offs or deductions which might be revealed by a final audit to be conducted shortly after completion of the project. Because of such contingencies the Tenth Circuit ruled that no accrual by the contractor was necessary until the audit was concluded and the owner's liability had been reduced to a fixed and definite sum. See also Commissioner v. Cleveland Trinidad Paving Co.,62 F.2d 85 (6th Cir. 1932); Gar Wood Industries, Inc. v. United States,437 F.2d 558 (6th Cir. 1971). [4]
We must determine, then, whether there are sufficient contingencies *139 on the ultimate receipt of the retainage to preclude accrual at the point the retainage is invested by the escrow custodian. To resolve this issue we need only reiterate the factual conclusions we reached in Iler regarding the contractor's rights to the retainage once it has been placed in escrow. Iler, as we have indicated, involved a fact situation almost indistinguishable from the present case. Pursuant to a contractor's retainage election, retainage was paid into escrow by the Department of Highways under an Escrow Agreement which required the funds to be invested in certain governmental obligations. We held that the contractor, who used the cash method of reporting income and expenses, had not constructively received the escrowed funds because there were substantial conditions which rendered the ultimate receipt of the funds uncertain. Those conditions, which are also present in the case before us, are as follows: (1) Under the terms of the contract, no retainage was to be released prior to approval and acceptance of the work by the Department of Highways. (2) Under the terms of the Escrow Agreement the Department of Highways possessed the unilateral and unconditional *140 right to declare the contractor's performance to be in default at any time prior to final approval and to demand the return of the retainage. The Bank was contractually obligated to comply with this demand. Given the existence of such conditions, we think neither the receipt nor the investment of the retainage by the escrow custodian sufficiently fixes the contractor's right to the funds so as to require accrual under the all-events test. Dally v. Commissioner,supra;Marquardt Corp. v. Commissioner,supra. Furthermore, the record in this case discloses an additional contingency not mentioned in Iler. Although the events which fix the contractor's right to receive the retainage are the approval and acceptance of the work performed, the actual amount of retainage to be released depends on a final determination of the total amount due the contractor under the agreement. That determination, in turn, requires agreement between the parties as to the actual quantity of each bid item used in construction and the amount of liquidated damages or other claims, if any, with the Department of Highways having the right to resolve any dispute as *141 to the sum due. To signify the parties' agreement the contractor executes FormTD 14-5, in which he agrees to accept a specified sum as payment in full under the contract. Only at that point, we think, can the amount of retainage due the contractor be ascertained with sufficient accuracy so as to warrant accrual for Federal income tax purposes. United States v. Harmon, supra.[5]
Notwithstanding the conditions attached to the receipt of the retainage, respondent insists that the taxpayers in Iler and in the present case were in actual receipt of the retainage at the point the escrowed funds were invested in governmental obligations. Respondent maintains that by electing to have the retainage placed in escrow and invested in securities for its benefit, petitioner exercised sufficient dominion and control over the funds to trigger recognition of income. *142 Without the election, respondent argues, the State would have retained custody of the funds until the completion of the construction work and petitioner would have derived no economic benefit from the retainage during the interim. It is true that by electing to have the retainage placed in escrow petitioner became entitled to and did receive an economic benefit in the form of investment interest. Nevertheless,. petitioner's ownership rights in the excrowed funds were extremely limited, as we indicated in Iler: Construction Company did possess certain powers with respect to the investment and receipt of income from the retainage funds. However, we regard such powers as inconsequential in view of the substantial conditions imposed upon the company's receipt of such "retainage" and in view of the restricted list of low-risk governmental obligations which could be purchased with the retainage funds. Such powers did not permit Construction Company to exercise unfettered or even substantial control over the disposition and utilization of the retainage funds. Given such limited incidents of ownership, we are unwilling to find actual receipt simply by virtue of petitioner's *143 election to have the retainage invested pending completion of contract performance. Moreover, we think the substantial conditions imposed on the eventual release of the retainage make this case clearly distinguishable from the so-called "economic benefit" cases, where actual receipt to cash method taxpayers was premised on the existence of a vested, rather than contingent, right to future possession of a particular fund. See and compare Stiles v. Commissioner,69 T.C. 558 (1978); Jacuzzi v. Commissioner,61 T.C. 262 (1973); Sproull v. Commissioner,16 T.C. 244 (1951), affd. per curiam 194 F.2d 541 (6th Cir. 1952); Goldsmith v. United States,218 Ct. Cl. 387, 586 F.2d 810 (1978). Accordingly, we hold that petitioner is not required to accrue any of the retainage received by the Bank during the taxable years in issue. To reflect concessions made by the petitioner and our conclusion of the disputed issue, Decision will be entered under Rule 155. Footnotes
1. The securities which could be purchased with the escrowed funds were restricted to U.S. Treasury Bonds; U.S. Treasury Notes; U.S. Certificates of Indebtedness; U.S. Treasury Bills; Bonds of the Commonwealth of Kentucky; and Bonds in any political subdivision of the Commonwealth of Kentucky, including school districts.↩
2. Section 1.9.7 of the Standard Specifications allows the Department of Highways to authorize a partial release of retainage subsequent to the completion and acceptance of the project but prior to a final determination of the actual amount owed the contractor.↩
3. Respondent has not made a corresponding downward adjustment to the deficiency for the 1972 taxable year. Such an adjustment would obviously be required, however, if we were to agree with respondent's theory of inclusion in this case.↩
4. In Rev. Rul. 69-314, 1969-1 C.B. 139, respondent adopted the view espoused in Dally and Harmon↩ and ruled that where the release of retainage is conditioned on the completion and acceptance of the contract work, accrual of retainage income is not required until those events have taken place.
5. We note that if the contractor receives a partial distribution from escrow pursuant to Section 1.9.7 of the Standard Specifications (see note 2, supra), the distribution clearly satisfies the all-events test and must be included in income regardless of whether the contractor has executed FormTD 14↩-5.